## FREDERICK DIETUS *vs.* FRANCIS J. FUSS, Trustee of GOTLIEB DIETUS.

A prayer which leaves it to the jury to infer that a bill of sale was fraudulent and void as to creditors, from the fact, *simply,* that the grantor, at the time he executed it, was indebted to *several persons,* whose debts remained unpaid, without submitting to them any question as to the *amount* of such indebtedness or the extent of the grantor's means, or whether he was in embarrassed or insolvent circumstances, is defective.

*Trover* cannot be maintained without a conversion either direct or constructive, and which must be proved either directly or by inference.

When the plaintiff fails to prove an actual conversion, he must give evidence of a *demand and refusal* made at a time. when the defendant had the power to give up the goods.

A demand and refusal are only evidence of a prior conversion, which may be explained or rebutted by evidence to the contrary.

Where a party in insolvent circumstances sells property, and his *vendee* sells or disposes of it *after* the vendor petitions, or if *before* petition and while the goods are in his possession the vendor makes a *second sale,* which the first vendee subsequent to the petition *adopts or sanctions,* it will amount to a conversion by such vendee without a demand and refusal.

But the mere fact that a party before he petitions makes a fraudulent bill of sale of property, without any proof as to an actual conversion or a demand and refusal, will not justify a verdict in *trover* in favor of the insolvent's trustee against the grantee.

A prayer that the insolvent trustee could not recover against such grantee, unless the jury believe the bill of sale void under the *insolvent laws,* is defective, because though not void under those laws, the deed may still be void under the *statute of Elizabeth.*

The *particular day* named in the *nar,* either in reference to the possession of the party whose goods have been converted or to the conversion, is an *immaterial averment* as to *time.*

APPEAL from the Superior Court of Baltimore city.

*Trover* by the appellee, as permanent trustee in insolvency of Gotlieb Dietus, brought on the 8th of July 1851, against the appellant, to recover the value of twenty-three cows, four horses, seven hogs, one milk-wagon, and a lot of household and kitchen furniture, which the *nar* alleges the said Gotlieb was possessed of on the 11th of February 1851, and on the same day casually lost, and which on the same day came to the possession of the defendant by finding, and were converted by him to his own use on the 26th of June 1851. The *nar* also alleges, that on the 11th of February 1851, said Gotlieb petitioned for the benefit of the insolvent laws, and the plaintiff was appointed his permanent trustee, and filed a duly approved bond as such on the 25th of June 1851. Plea, *non cul.*

*Exception.* It was admitted that Gotlieb Dietus petitioned for the benefit of the insolvent laws on the 11th of February 1851, and that plaintiff was appointed his permanent trustee and duly bonded as such on the 25th of June 1851. The plaintiff then proved that said Gotlieb had not obtained his final discharge, and then called several witnesses who proved substantially the following facts: that said Gotlieb carried on the milk-business, and his property was appraised, at the instance of the defendant, in March or April 1851, at $900 or $1000; that not long prior to his application for the benefit of the insolvent laws he was hard pressed for money, borrowed small sums, said his brother, the defendant, had helped him out several times and he was afraid to apply to him again; that in the spring of 1851 he was sued and said he must petition if the judgment could not be superseded; that he carried on his business as usual up to time of his application and was in possession of his stock, &c.; that on the 25th of June 1851, plaintiff made a demand in writing upon the defendant for the property in dispute which was received by him from Gotlieb, and particularly described in a bill of sale from Gotlieb to defendant, dated the 13th of June 1850, to which defendant replied that he would not give it up. He also offered in evidence several notes given by Gotlieb for debts dated in 1850 and 1854.

The defendant then offered in evidence the bill of sale of the property in question (which was duly recorded) from Gotlieb to him, dated the 30th of June 1850, in consideration of $1000 in hand paid. He then proved by several witnesses, that Gotlieb had been several times in execution on other judgments than that on which when arrested he petitioned; that he carried on his business up to the time of his arrest and was in his milk-wagon when arrested, and on the same morning petitioned; that defendant was a butcher and did not carry on the milk-business. He then proved by Sacks, that on the 28th of January 1851, Gotlieb sold to witness a lot of cows, horses, hogs, milk-wagon, and other property appertaining to his milk concern, for $1000, of which $400 was paid by the extinguishment of a debt due by Gotlieb to him, which had been running for several years, and for which defendant was security, and the remaining $600 was paid to defendant; that defendant was not present at this sale; that at that time Gotlieb had the property in his possession, and shortly thereafter delivered possession thereof to witness and moved from the place, carrying with him the articles he had not sold; that defendant told witness to sell his brother, Gotlieb, cows and he would pay for them.

The plaintiff then recalled a witness, who proved that he heard defendant tell the plaintiff, who inquired of him why he had taken so large a bill of sale, as Gotlieb could not owe so much? that he had taken it so that none of the creditors should lose any thing. The plaintiff then offered three prayers, as follows:

1st. If the jury find from the evidence that at the time the bill of sale offered in evidence was made by Gotlieb Dietus he was indebted to several persons, who are yet unpaid, and that after its execution he remained in possession of the property therein mentioned as before, and prosecuted his business as milk-dealer up to a short time before his application for the benefit of the insolvent laws, and that the consideration mentioned in said bill of sale was not *bona fide* paid as therein stated, in money or in satisfaction of some existing debt due by the grantor to the grantee, or in other equivalent value,

and that the contract between Gotlieb and Sacks was made with the privity of the defendant, then the jury may infer that said bill of sale was made to hinder and delay the creditors of said Gotlieb, and if they make such inference, it is fraudulent and void as against the creditors of said insolvent.

2nd. If they find the facts stated in the first prayer and draw the inference thereby authorised, and further find that before the institution of this suit the plaintiff was appointed permanent trustee of said Gotlieb Dietus, and gave bond as such, which was afterwards duly approved, and that thereafter he demanded of the defendant the property mentioned in said bill of sale, and that defendant refused to deliver the same, then plaintiff is entitled to a verdict for such amount as the jury may find from the evidence to be the value of the property in question.

3rd. This prayer is fully stated in the opinion of this court.

The defendant then offered the five following prayers:

1st. This prayer contains the proposition which is also fully stated in the opinion of this court.

2nd. If the jury find from the evidence that defendant came into possession of the chattels in question prior to Gotlieb's application for the benefit of the insolvent laws, under the bill of sale of the 13th of June 1850, and that such possession ended prior to said application, in consequence of no act or consent of the defendant, but of the acts of Gotlieb; and further, that at the time of the alleged demand and refusal the defendant had not possession or control of said chattels, they must find a verdict for the defendant.

3rd. This prayer is fully stated in the opinion of this court.

4th. If the jury shall find from the evidence that defendant came into possession of the goods and chattels alleged to be converted under a sale or transfer from Gotlieb Dietus prior to his application for insolvency, and that plaintiff, since his appointment as trustee of said Gotlieb, has made no demand of said goods and chattels at a time when defendant had possession or control of them, then, though they believe such sale or transfer was made in contemplation of insolvency, they must find for the defendant.

5th. This prayer is fully stated in the opinion of this court.

The court below, (FRICK, J.,) granted all the prayers of the plaintiff and rejected all those offered by the defendant, and then gave the instruction set out in the opinion of this court. To which instruction by the court, as well as to the granting of each of the plaintiff's and the rejection of each of the defendant's prayers, the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*James A. Buchanan* and *Chas. J. M. Gwinn* for the appellant, argued:

1st. That the plaintiff's *first prayer* is erroneous in this:—
1st. That it makes the mere fact of an indebtedness of Gotlieb Dietus at the time of the execution of the bill of sale a circumstance from which the jury may infer it was intended to hinder and delay his creditors, without limiting the instruction in such a manner as that the jury should consider the *amount* of such indebtedness, its proportion to the whole property conveyed, the presence or absence of proof as to his possession of other property sufficient to pay such outstanding demands. 5 *Gill*, 449, *Worthington, et al., vs. Shipley.* Under the law of this part of the instruction, if the jury had found an indebtedness on the part of Gotlieb of *one dollar*, the technical requirement of the instruction would have been satisfied. 2nd. It makes Gotlieb's remaining in possession of the chattels conveyed a circumstance from which the jury may also infer such intent to hinder and delay creditors, when, by the provisions of the act of 1729, ch. 8, sec. 5, the bill of sale having been duly recorded, the grantor's remaining in possession was in exact conformity with law and good faith. 3rd. It improperly makes the prosecution of his business by Gotlieb with the articles so legally in his possession up to the time of his application, a circumstance from which the jury may infer an intent to hinder and delay his creditors in executing the bill of sale. 4th. It authorises the jury to find an intent to hinder and delay creditors, if they believe the *very pecuniary consideration*

Dietus *vs.* Fuss, Trustee of Dietus.

of $1000 was not paid by the defendant to Gotlieb either in its *exact* sum of money, or in its *exact* sum in satisfaction of existing debts, or in some other *exact* equivalent value, which was well calculated to mislead the jury, as it did not leave to them the simple determination of the inquiry, whether the consideration was a valuable one or not, but left them free to find for the plaintiff if defendant had paid any *less* sum than $1000 or was the creditor of Gotlieb in any *less* sum. 5th. It authorises the jury to find the privity of the defendant to the sale made to Sacks to be a circumstance of fraud, when such sale was right and proper if it had the assent of the defendant, since, by the recording of the bill of sale, the right of property in the chattels transferred was vested in him and the right of possession remained in Gotlieb so long as it was not claimed by defendant, and in the disposition of the property with the consent of the defendant, Gotlieb can only be intended to have acted as his proper agent and by his permission. 6th. The question should not have been upon the intent, as it is here inferentially made, with which the defendant took the bill of sale, but upon the intent with which Gotlieb made it and the consideration upon which it was made; for if made without intent to hinder and delay creditors and for a valuable consideration, the assent given afterwards by the defendant to the disposition of the property could not affect the validity of the bill of sale in its inception and execution. 7th. The conduct of the defendant subsequent to the execution of the bill of sale with regard to the disposition of the property conveyed to him, making no part of the *res gestæ*, was not a proper circumstance to be left to the jury as in any sense an *indicium* of fraud. 3 *Md. Rep.*, 77, *Stewart vs. Redditt.*

2nd. The plaintiff's *second prayer* is also erroneous:—1st. Because it is based upon the first prayer which we have shown to be defective. 2nd, for the further reason, that it makes the mere fact of demand and refusal evidence of a conversion, although it was in proof the property was not at the time of such demand and refusal in the possession or under the control of the defendant, and never had been in his possession. 3rd. Because in order to make a demand and refusal evidence of a

conversion, it must be proved that defendant had at the time of such demand and refusal the possession or control of the property demanded of him. 2 *H. Bl. Rep.*, 135, *Nixon vs. Jenkins.* 2 *Greenlf. on Ev.*, sec. 644. 11 *Mees. & Wels.*, 362, *Edwards vs. Hooper.* 9 *Barn. & Cres.*, 764, *Jones vs. Fort.* 1 *Camp.*, 439, *Smith vs. Young.* 13 *Pick.*, 294, *Vincent vs. Cornell.* 3 *Metcalf*, 6, *Leonard vs. Tidd.*

3rd. The plaintiff's *third prayer* is defective, because it assumes that the mere invalidity of the deed to the defendant gave the plaintiff a right to recover in trover, without leaving it to the jury to find whether there had been any actual conversion of the property by the defendant, or any demand made on, and refusal by him, if he had it in his possession; or without leaving them to find whether the defendant had ever been in the actual possession of the property so conveyed to him by the bill of sale; and because, in fine, the prayer assumes that a right to the possession of the chattels or to their proceeds was of itself sufficient to maintain trover, whereas, on the contrary, the prayer is not law, because it does not direct the jury to find such demand and refusal or any fact equivalent thereto. *Vide* cases cited on the second point.

4th. The defendant's *first prayer* presented the *true rule* to enable the jury to test the *validity* of the bill of sale, and should have been granted. 5 *G. & J.*, 377, *Hickley vs. Farmers & Merchants Bank.* 6 *Do.*, 323, *Crawfords vs. Taylor.* Act of 1834, ch. 293, sec. 1. 7 *G. & J.*, 170, *Dulaney vs. Hoffman.* 6 *Do.*, 205, *State vs. Bank of Md.* *Ibid.*, 363, *Union Bank vs. Ellicott.* 1 *Gill*, 412, *Cole vs. Albers & Runge.* 4 *Do.*, 38, *Wheeler vs. Stone.* 7 *Do.*, 378, *Gardner vs. Lewis.* *Ibid.*, 439, *Stewart vs. Union Bank.*

5th. Our *second prayer* presented the true law of the case. *Vide* authorities under the second point, and 6 *Barbour*, 436, *Kelsey vs. Griswold.*

6th. The court erred in rejecting our *third prayer*, for the reason that the defendant could not be made liable when the property had been taken from him by Gotlieb before he was insolvent, and before his trustee had acquired any right to the

Dietus *vs.* Fuss, Trustee of Dietus.

property in question.  12 *G. & J.*, 341, *Repp vs. Repp.*  11
*Mees. & Wels.*, 362, *Edwards vs. Hooper.*  And for the fur-
ther reason that the plaintiff, in his declaration, avers that the
defendant converted Gotlieb's property to his own use on the
11th of February 1851, and the defendant was not liable if he
could show that Gotlieb had taken the property from him prior
to February 11th, 1851, when Gotlieb applied for the benefit
of the insolvent laws.

7th.  Our *fourth prayer* was also improperly rejected for the
reason, that if the jury found the defendant came into posses-
sion of the property in the manner stated in the prayer, he
could not be guilty of a conversion until it was demanded of
him and until he had refused to give it up.  And in order to
make a demand and refusal evidence of a conversion, the
plaintiff must show that at the time it was made the defend-
ant had possession or control of the property demanded.  2
*Greenlf. on Ev.*, sec. 644.  2 *H. Bl. Rep.*, 134, *Nixon vs.
Jenkins.*  13 *Pick.*, 294, *Vincent vs. Cornell.*  5 *Md. Rep.*,
433, *Stewart vs. Spedden.*

8th.  Our *fifth prayer* should have been granted, for the
reason that the plaintiff avers in his declaration that the prop-
erty in the goods and chattels in question was in Gotlieb, on
the 11th of February 1851, when the defendant converted
them to his own use, and this must be *proved*, because a prior
conversion is not sufficient.  11 *Mees. & Wels.*, 362, *Edwards
vs. Hooper.*  2 *Younge & Jervis*, 101, *Balme vs. Hutton.*  4
*Md. Rep.*, 352, *Mayor & C. C. of Balto. vs. Norman.*

9th.  The court erred in its instruction, because it was cal-
culated to, and doubtless did, mislead the jury; for under it
they could find a verdict for the plaintiff if they believed the
bill of sale invalid, although they should not have found that
defendant was ever in possession of the goods conveyed to him
by it, or that he ever converted them to his own use, or though
they should believe there had been no sufficient or any demand
or refusal, and though they should find the goods had been sold
to Sacks without authority from the defendant, or had been, in
fact, converted to the use of Gotlieb by the single act of Gotlieb,
and because upon this instruction, which is avowed by the court

to be the law of the whole case, no rule was furnished to the jury by which they could assess the damages in the case.  2 *Greenlf. on Ev., sec.* 649.  5 *Md. Rep.*, 438, *Stewart vs. Spedden.*  7 *H. & J.*, 257, *Bohn vs. Headley.*

10th.  That as from the proof there can be no recovery, a *procedendo* ought to be refused if judgment is reversed.  7 *H. & J.*, 251, *Bohn vs. Headley.*  6 *Md. Rep.*, 113, *Gittings vs. Mayhew.*  6 *Gill*, 191, *Emery vs. Gault.*

*John J. Snyder* and *David Stewart* for the appellee, argued:

1st.  That there was evidence to go to the jury, that the bill of sale made by the insolvent to the defendant was not made fairly and *bona fide*, and the plaintiff therefore could recover the property in *trover*.  1 *Md. Rep.*, 455, *Waters vs. Dashiell.*

2nd.  That the demand made by the plaintiff upon the defendant for the property in the written demand mentioned, and the unqualified refusal of the defendant to deliver the same was evidence of the previous conversion by the defendant of the property referred to in the demand.  7 *Eng. C. L. Rep.*, 278, *Wilton vs. Girdstone.*

3rd.  That the contract between the insolvent and Sacks, if made with the privity of the defendant, was evidence from which the jury might infer, that the bill of sale set up by the defence was made to hinder and delay the creditors of the insolvent, and that there is in the record abundant evidence of such privity on the part of the defendant.

4th.  That the rights of the plaintiff have relation back to the date of the application of the insolvent, and that if the bill of sale was fraudulent the defendant is responsible to the plaintiff for any conversion of the property whereby it was withheld from the plaintiff as trustee, though such conversion may have taken place before the day of the demand and refusal.  1 *Term. Rep.*, 157, *Thompson vs. Councel.*  5 *Bingh.*, 597, *Price vs. Helyar.*  3 *Camp.*, 396, *Wyatt vs. Blades.*  *Smith's Lead. Cases*, 237.  6 *East*, 540, *McCombie vs. Davies.*  7 *Johns.*, 257, *Bristol vs. Burt.*  5 *Cowen.*, 323, *Reynolds vs. Shuler.*

5th.  That the sale by the defendant or with his consent,

after the application of *Gotlieb Dietus* for the benefit of the insolvent laws, was an actual conversion, and that a demand and refusal were unnecessary. 5 *East*, 407, *Bloxam vs. Hubbard.* 1 *Eng. C. L. Rep.*, 439, *Craven vs. Ryder.* 14 *Do.*, 222, *Yates vs. Carnsew.* 4 *Blackford*, 397, *Coffin vs. Anderson.* 1 *Burr*, 20, *Cooper vs. Chitty.* 23 *Eng. C. L. Rep.*, 338, *Balme vs. Hutton.* 16 *Do.*, 237, *Egan vs. Threlfall.*

These points we think cover the entire case and demonstrate the correctness of the ruling of the court below in granting the plaintiff's prayers and rejecting those of the defendant; and also vindicate the propriety of the court's instruction, which is not to be regarded as a distinct and separate instruction, but must be taken in connection with the plaintiff's prayers.

ECCLESTON, J., delivered the opinion of this court.

The first proposition in the plaintiff's first prayer, relied upon as furnishing evidence, in connection with other matters, to justify the inference, that the bill of sale alluded to was made to hinder and delay creditors, and therefore void, is simply, that when Gotlieb Dietus executed the instrument he was indebted to *several persons*, who remained unpaid up to the time of trial. There is no question submitted to the jury as to the amount of his indebtedness or the extent of his means, nothing as to whether he was in embarrassed or insolvent circumstances further than what might be conjectured from the fact of his having several creditors whose claims were not subsequently paid. The language of the instruction would have been complied with if the jury had believed Gotlieb Dietus' creditors were three in number, to each of whom he owed five dollars, whilst he was worth forty thousand dollars. A prayer containing a proposition so well calculated to mislead a jury should not have been granted.

The second prayer on behalf of the plaintiff presents, not only the facts, but also the inference to be drawn from them, as set forth in the first; and if that is erroneous this likewise must be so.

Before expressing an opinion in reference to the plaintiff's

third prayer it is proper to notice some of the principles relating to the subject of conversion, for the action of trover cannot be maintained without a conversion. It may be either direct or constructive, and therefore may be proved directly or by inference. When the plaintiff fails in proving an actual conversion it will be necessary for him to give evidence of a *demand and refusal* having been made at a time when the defendant had the power to give up the goods. A demand and refusal are only evidence of a prior conversion, which may be explained and rebutted by evidence to the contrary. 2 *Greenl. on Ev.,* secs. 642, 644. *Edwards vs. Hooper,* 11 *Mees. & Wels.,* 363.

In *Nixon vs. Jenkins,* 2 *H. Bl. Rep.,* 135, goods were sold to the defendant by a party in contemplation of insolvency, and with a design of defeating the claims of his creditors. He committed an act of bankruptcy shortly after the sale, and an action of trover was instituted by his assignees to recover the value of the goods, in which they gave no proof of a demand and refusal. On behalf of the plaintiff it was insisted, that because the sale was fraudulent no demand and refusal need be proved, that being only necessary where the possession was originally lawful, and then the possession was wrongful.

But it was held by the court, "That a demand and refusal were necessary to maintain the action. When the sale was made the parties were competent to contract; there was no unlawful taking of the goods, though the transaction was liable to be impeached by the assignees. They might either affirm or disaffirm the contract, and if they thought proper to disaffirm it they ought to have demanded the goods, a refusal to deliver which would have been evidence of a conversion." And in *Browne on Actions at Law,* 440; the author says, "If a trader, in contemplation of bankruptcy, make a collusive sale or fraudulent preference, the assignees cannot maintain trover without a demand and refusal." In support of which position he refers to 2 *H. Bl. Rep.,* 135; 9 *B. & C.,* 764; and 4 *M. & R.,* 547. See also *Stewart vs. Spedden,* 5 *Md. R.,* 449, as to when a demand is necessary.

Although the principle stated by Brown, and recognized in

the authorities cited by him be true, yet if a vendee, under such a sale, disposes of the property by sale or otherwise, after his vendor has made application for the benefit of the insolvent laws, or if prior to the application, whilst the goods were remaining in the possession of the original vendor, he may have made a second sale of them, and subsequently to the petition the first vendee adopts or sanctions that sale, such conduct will amount to a conversion without a demand and refusal, so far as relates to the sale of the goods so adopted or sanctioned. The authorities referred to by the appellee's counsel show this view of the subject to be correct. And surely it would not be promoting the ends of justice to hold, that without a demand and refusal the trustee of an insolvent could not maintain an action of trover against the first vendee under such circumstances, because a demand and refusal, after he had parted with all authority and control over the property, would not make him responsible in trover, as he would have no power to comply with the demand when made.

The third prayer asked the court to instruct the jury, if they should find that when the suit was instituted the plaintiff had been appointed permanent trustee of Gotlieb Dietus, and had given bond as such; and if they should also find, that the bill of sale given in evidence was not made upon the consideration therein stated, and was not made *bona fide*, that then the said bill of sale was clearly and utterly void, and the plaintiff was entitled to recover what the jury might find to be the value of the property therein mentioned. If we are to consider this prayer as having any reference whatever to the subject of conversion, it must rest exclusively upon the hypothesis, that the bill of sale was fraudulent and void, and that the simple execution of it operated as a sufficient conversion to sustain the suit; without requiring that the jury should find anything in reference to the possession of the goods, whether they had been resold or in any way disposed of, or whether there had been a demand and refusal. The bill of sale was made before the grantor filed his petition as an insolvent, and even admitting it was fraudulent, and the jury might have believed it to be so, still that alone, unsupported by any other fact in regard

to an actual conversion, or to a demand and refusal, would not justify a verdict in trover in favor of the plaintiff. The prayer was therefore erroneous.

The first prayer of the defendant was properly refused. The proposition contained in it is, that the plaintiff was not entitled to recover unless the jury believed the bill of sale had been made by the grantor with a view or intent of taking the benefit of the insolvent laws; and unless they should likewise believe the defendant had actual notice that the grantor was insolvent at the time of executing the bill of sale, and of the intention of the grantor to apply for the benefit of the insolvent laws. This was erroneous, because it .did not follow that if the bill of sale was not void under our insolvent laws it might not be successfully assailed under the statute of Elizabeth, in the opinion and belief of the jury.

Our reasons for thinking the court did right in refusing the defendant's third prayer will be found sufficient, we think, to show there was no error in not granting his second prayer.

The position taken in the defendant's third prayer is, that if the jury believed the defendant's possession of the chattels in question, at any time prior to Gotlieb Dietus' application for the benefit of the insolvent laws, was with the consent of Gotlieb Dietus; and should also believe that such possession ceased by the act and choice of Gotlieb prior to his application as an insolvent, and that at the time of the plaintiff's alleged demand of the chattels the defendant had not possession of them, the verdict should then be for the defendant.

Although the jury might have believed all the matters to be true which were submitted for their consideration; and although the defendant's possession may have ceased by the act and choice of Gotlieb prior to his petition; nevertheless if the jury believed the bill of sale was fraudulent, and that after the petition the sale and delivery of possession made prior thereto by Gotlieb were adopted or sanctioned by the defendant, such acts amounted to a conversion, which rendered a demand and refusal unnecessary. In reference to the circumstances just mentioned, which, if believed by the jury to be true, would constitute a conversion, there is some evidence, but it is not

our province to say whether the evidence is or is not sufficient to prove them.

Admitting the truth of all the circumstances presented in the prayer, on which the defendant based his right to a verdict, still there is evidence tending to prove other circumstances, which if found by the jury would entitle the plaintiff to a verdict. The prayer was therefore properly refused by the court.

The defendant's fourth prayer was erroneous for the reasons assigned in regard to the third.

In his fifth prayer the defendant asked an instruction to the jury, that the plaintiff was not entitled to recover unless they believed that the defendant had possession of or exercised control over the goods at some time since the tenth day of February 1851. In support of the position here taken, the defendant says, the plaintiff avers in his declaration, that the property in the goods was in Gotlieb Dietus on the 11th of February 1851, when the defendant converted them to his own use, and this he assumes must be proved, because a prior conversion is not sufficient. As to the averment in the *nar*, in regard to the date of the conversion, he is mistaken; the allegation being that the defendant converted the goods on the 26th day of June 1851; but if he were correct in his facts still his prayer would not be so. The *particular day* named in a *nar*, either in reference to the possession of the party whose goods have been converted, or in relation to the conversion, is not material, as may be seen by reference to two forms of *nars*, in trover, by assignees of bankrupts, to be found in 1 *Saund. Pl. & Evi.*, 205, 206.

The defendant's counsel relied with much confidence upon the case of *Edwards vs. Hooper* as sustaining their views; but that decision did not turn upon the materiality of any *particular day* named in the *nar*. The statement of the assignees' right of property instead of merely stating their right of action rendered it necessary to prove that the conversion was after the plaintiffs became assignees. But there was no discussion, either by counsel or judges, as to the materiality of the precise days stated in the *nar*. This decision does not contradict what

21      v.8

is said by Saunders, nor do the other cases cited on the subject.

The statement in the *nar*, that on the 11th of February 1851, Gotlieb had possession of the goods, and on the same day they came to the possession of the defendant, by finding, we consider immaterial averments in regard to time, and that the court were right in refusing to grant the fifth prayer of the defendant.

According to the record it appears the plaintiff offered three prayers, which were all granted; then the defendant submitted five prayers, which were all refused. The language of the record at this point, (after having set forth the prayers,) is, "And the court rejected all the said prayers of the said defendant, and instructed the jury, that the sole question for them was, as to the validity of the bill of sale from Gotlieb Dietus to the defendant; that if they should find the said bill of sale not to have been made *bona fide* the plaintiff was entitled to recover what they should find to be the value of the property, but if they should find that the bill of sale was made in good faith their verdict should be for the defendant." This instruction, as also the granting of the plaintiff's prayers, and the rejection of those of the defendant, were all excepted to by him.

Notwithstanding what had previously taken place the jury might well have been misled, when informed voluntarily by the court, in very explicit terms, that the *sole question* for them was, as to the validity of the bill of sale, with direction to find a verdict for the plaintiff, if they believed that instrument to have been fraudulent, but if made in good faith then their verdict should be in favor of the defendant. From this the jury might very readily have supposed it was their duty to decide in favor of the plaintiff if they believed the bill of sale was fraudulent, without making any enquiry in regard to a demand and refusal, or to an actual conversion at any time. Taking this view of the instruction we must consider it erroneous, after what has been said on the subject of conversion in reference to the plaintiff's third prayer.

But the appellee's counsel say this direction to the jury is not to be considered as standing by itself; on the contrary it

must be looked at in connection with the plaintiff's prayers
previously granted. Admitting this to be so, still the instruc-
tion will receive but little aid from such connection, inasmuch
as we have decided that each of the plaintiff's prayers is erro-
neous.

We affirm on the defendant's prayers but reverse on those
of the plaintiff, and also on the last instruction given by the
court.

*Judgment reversed and procedendo ordered.*