## WILLIAM E. MATTINGLY *v.* FRANCIS E. MATTINGLY.

*Trover—Constructive Conversion.*

Where land sold to a corporation was to be paid for in part in stock of the corporation, and, by the vendor's direction, such stock was issued by the corporation to a third person, the latter, having thus rightfully acquired the stock, was not liable as for a constructive conversion because he refused to deliver it, on demand, to an assignee of the vendor of the land, until certain indebtedness to him, which was in the nature of a lien on the stock, was paid.

*Decided June 9th, 1926.*

Appeal from the Circuit Court for Prince George's County (LOKER, J.).

Action by William E. Mattingly against Francis E. Mattingly. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, PARKE, and WALSH, JJ.

*William H. Surratt,* with whom were *M. H. Magruder* and *Paul R. Hassencamp* on the brief, for the appellant.

*Walter J. Mitchell* and *S. Marvin Peach,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment rendered in the Circuit Court for Prince George's County in an action of trover brought by the appellant against the appellee for the wrongful conversion of fifteen thousand dollars, par value, of the preferred stock, and fifteen thousand dollars, par

value, of the common stock, of the Brightwood Sanitarium
Company.

The stock was, on the 25th day of March, 1920, issued
and delivered by the Brightwood Sanitarium Company to
Francis E. Mattingly, the appellee, at the request, and in
the presence, of J. Benjamin Mattingly, the assignor of the
appellee, under the facts and circumstances fully stated in
*Mattingly v. Mattingly,* 143 Md. 227, a suit between the
same parties. In that case certain lands in Howard County
were sold to the Brightwood Sanitarium Company. This
property had formerly belonged to J. Benjamin Mattingly,
but had been sold under a mortgage, and the legal title
thereto had passed to the purchasers at such sale. It seems,.
however, that said purchasers had orally agreed with J. Ben-
jamin Mattingly that they would allow him to redeem the
property upon making certain payments to them. J. Benja-
min Mattingly found a purchaser in the Brightwood Sani-
tarium Company, and it became necessary for him to comply
with the oral agreement with the purchasers to redeem
the property. At this stage in the negotiations the appellee,.
Francis E. Mattingly, his brother, came upon the scene,.
and he, with the consent, if not at the suggestion, of J.
Benjamin Mattingly, obtained a written option from the
purchasers of the property at the mortgage sale to buy the
property so sold to them. Upon getting the option he, on the
same day, entered into a written agreement with the Bright-
wood Sanitarium Company to sell it to that company. A
part of the consideration paid to him therefor was the stock
above mentioned which, as we have said, was issued and
delivered on the 25th day of March, 1920.

After the issuance and delivery of said stock to Francis
E. Mattingly, an attempt was made by J. Benjamin Matting-
ly to have Francis E. Mattingly execute a written acknowl-
edgment that he had acquired the option to buy for his
brother Benjamin, and that the consideration received by
him for the property sold to the sanitarium company, in-
cluding the stock, was received and held by him as agent
of J. Benjamin Mattingly, and not in his own right.

A controversy then arose between them in which Francis E. Mattingly demanded that certain payments should be made to him for moneys owing to him, including charges for his services and expenses incurred by him in connection with the negotiation before doing as requested. They were unable to agree as to what was rightfully owing by J. Benjamin Mattingly to his brother in connection therewith, and nothing further was done towards procuring such acknowledgment, and on the 24th day of May, 1920, J. Benjamin Mattingly assigned said stock to another brother, William E. Mattingly, the appellee, and thereafter the suit in that case was instituted by him, as assignee, against Francis E. Mattingly.

In that case this Court said: "The evidence shows that although the option from Mr. Digges and others (the purchasers at said mortgage sale) was taken in the name of Francis E. Mattingly, and the option to the Brightwood Sanitarium Company was signed by him, he nevertheless was acting therein for and on behalf of his brother, Benjamin, and for his benefit; and consequently the profits, if any, accruing from the purchase and sale of the property, belonged to William E. Mattingly, as assignee of his brother, subject to any money paid and advanced by Francis E. Mattingly for authorized or needed expenses and advancements growing out of and immediately connected with the transaction, but not subject to compensation for services rendered by him, or for money owing to him by his brother, not growing out of and immediately connected with the transaction." The decree was reversed and the case remanded that evidence might be taken, if desired, "showing the amount of money, if any, paid or advanced by Francis E. Mattingly for authorized or needed expenses and advancements growing out of and immediately connected with the aforesaid transaction, with his brother."

Upon remand of the case further evidence was taken and a decree passed thereon allowing to Francis E. Mattingly certain items for authorized or needed expenses and advance-

ments "growing out of and immediately connected with the transaction." Among the items so allowed was a fee of two hundred and fifty dollars to Messrs. Hamilton and Hamilton, which, upon appeal to this Court, was not allowed, in an opinion filed April 10th, 1924 (*Mattingly v. Mattingly,* 145 Md. 521).

The certificates of stock, which were in the name of Francis E. Mattingly, remained in his possession throughout the whole period of the litigation, with no attempt on his part, so far as the record discloses, to dispose of them. After the payment to him of the items allowed him, under the decision of this Court previously mentioned, out of a fund then in the hands of the clerk of the Circuit Court for Howard County, being part of the cash proceeds from the sale of the property to the Brightwood Sanitarium Company, Francis E. Mattingly offered and tendered delivery of the stock to William E. Mattingly, the assignee of J. Benjamin Mattingly, which was declined by him, and thereafter this suit was brought by William E. Mattingly to recover the value for the alleged wrongful conversion of the stock, which suit resulted in a verdict and judgment for the defendant.

Mr. Poe, in his work *Pleading,* sec. 215, divides conversion, which is the gist of the action of trover, into three kinds. 1st. Tortious: That is, an actually wrongful taking or carrying away of the plaintiff's goods by the defendant, with the intent to appropriate them to his own use, or that of a person for whom he is acting; or to deprive the plaintiff of the use of them; or a destruction, total or partial, or abuse of the goods. 2d. A wrongful assumption of the property in goods, or unauthorized acts of user or ownership over them. And 3d. A wrongful detention of the goods and refusal to deliver them after due demand, or a wrongful parting with the goods." If there has been a conversion in this case for which the defendant may be held liable, it is a conversion of the third class, known as a constructive conversion. A constructive conversion of this class arises, as stated by Mr. Poe "where the possession of the defendant, in the first instance, was rightful; as, for example, where he actually

found the goods in question, or acquired possession of them lawfully from the plaintiff or from a third person for a limited time or a special purpose. In all such cases, before the action of trover can be maintained, a previous demand by the plaintiff upon the defendant or his duly authorized agent for the delivery of the goods, and a refusal by the latter to deliver, must be shown, and the demand must be shown to have been made at a time when the defendant had it in his power to comply; otherwise the refusal to deliver is no evidence of conversion. The difference between the two classes of cases is this: Where the injury to the plaintiff's possession is *per se* tortious, the wrongful act itself constitutes the conversion, without more; and the right of action immediately accrues. But in all other cases, the fact of conversion is an inference merely from the refusal of the defendant to deliver the goods upon proper and seasonable demand—such demand and refusal not constituting a conversion in themselves, but being only *prima facie* evidence of an antecedent or continuing conversion, which may or may not be rebutted by the other circumstances of the case. Hence, where it appears that when the demand was made, the defendant refused to deliver until his legitimate liens and charges on the goods were first paid, there was no complete conversion. So also, where the refusal of the defendant is distinctly placed on the ground that they had been taken from his possession, or their delivery to plaintiff enjoined, by due process of law. And, indeed, anything which goes to show the *bona fide* inability of the defendant to comply with the demand will be sufficient; although it can hardly be doubted that if the defendant, in anticipation of the demand, purposely, and with a view of evading it, puts himself in a position, with respect to the goods in question, by which he is disabled from delivering them, such conduct will amount to a conversion. * * * The demand should be made by the plaintiff, or his duly authorized agent, upon the defendant or his agent, and should be so definite as to apprise the defendant with reasonable exactness what goods are meant, and in like manner, the refusal should be shown to be un-

qualified." *M. & C. C. of Baltimore v. Norman,* 4 Md. 352; *Stewart v. Spedden,* 5 Md. 449; *Dietus v. Fuss,* 8 Md. 148; *Dungan v. Mutual B. Assn.,* 38 Md. 242, 254; *Hammond v. Dubois,* 131 Md. 152.

.In this case, as we have said, the stock in question was issued in the name of Francis E. Mattingly and delivered to him upon the direction of J. Benjamin Mattingly, the assignor of the plaintiff, and it was therefore in no sense wrongfully obtained by the appellee.

J. Benjamin Mattingly testified that on the 12th day of June, 1920, after the assignment of the stock to his brother, William E. Mattingly, on the 24th day of May, 1920, he asked Francis E. Mattingly how much he was owing him, that he wanted to know as he wished "to settle it and get the stock." Francis denied that Benjamin ever called upon him for the return of the stock, but whether he did or not, it is shown by the decisions of this court in the two cases above mentioned, that at such time and at the time of the assignment of the stock to William E. Mattingly certain sums of money were owing by Benjamin to his brother, Francis, on a note given by Benjamin to Francis, upon which a judgment was thereafter entered, and for expenses incurred by him in connection with the purchase and sale of said property for his brother, and this Court in those cases held that, while the consideration received for said property belonged to J. Benjamin Mattingly, it was nevertheless subject to the payment of said indebtedness owing by him to his brother Francis. As the consideration received by Francis E. Mattingly for the property, including the stock in question, was subject to the payment of the indebtedness owing to him, which was in the nature of a lien thereon, for which no sufficient tender was ever made by either Benjamin or William to Francis, the failure of the latter to turn over the stock to the former, if such demand was in fact made, was not, at most, a complete conversion of the stock for which the plaintiff could recover. No demand was thereafter made upon Francis for the payment of said stock, and when, under the order of said court, he received the amount held to be

owing to him, he, very shortly thereafter, without further demand upon him, tendered the stock to William E. Mattingly. Upon these facts the plaintiff, we think, was not entitled to recover and the prayer of the defendant, which was refused by the court, asking that the case be withdrawn from the consideration of the jury, should have been granted and the case taken from the jury, and so holding, we need not consider the many other rulings of the court on the prayers and evidence.

The judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs to the appellee.*