# PARLETT FORD, INC. *v.*
# MICHAEL B. SOSSLAU

[No. 31, September Term, 1973.]

*Decided November 21, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON, MENCHINE and MOORE, JJ.

*James R. White* and *Patrick A. O'Doherty* for appellant.

*Allan Sosslau* for appellee.

MENCHINE, J., delivered the opinion of the Court.

Under a second amended declaration, Michael B. Sosslau [1] sued Parlett Ford, Inc., for the constructive conversion of a 1968 Cougar automobile. A jury in the Superior Court of Baltimore City rendered verdicts in his favor for $4,000.00 compensatory damages and for $36,000.00 punitive damages. From the judgments thereafter entered upon those verdicts Parlett Ford, Inc. has appealed. The grounds for appeal are:

1. the insufficiency of evidence of constructive conversion;
2. the insufficiency of evidence to sustain punitive damages; and
3. that appellant was prejudiced because the trial judge permitted co-counsel Sol Friedman to testify as a witness.

### 1. *Constructive Conversion*

Counsel for both appellant and appellee have cited cases from other jurisdictions upon the question of liability. We

---

1. A declaration in substantially identical terms originally had been filed with Murray D. Sosslau (father of Michael) the sole plaintiff. An amended declaration subsequently filed named both Murray D. Sosslau and Michael B. Sosslau as parties plaintiff. In the second amended declaration Michael B. Sosslau was the sole plaintiff. The question whether the second amended declaration was violative of Rule 320 2 (a) requiring "some one of the original plaintiffs and some one of the original defendants" to remain as parties to the action, is not before us, the parties having entered into a stipulation that "Michael Sosslau v. Parlett Ford, Inc., is the issue before [the jury] for them to honestly and fairly try * * *." See: Wright v. Gilbert, 51 Md. 146, 154.

find that prior Maryland decisions are wholly and clearly dispositive of that issue. Accordingly we will not attempt reconciliation of those disparate decisions.

Where, as is the case here, possession of the chattel by the defendant was derived from a voluntary surrender by the plaintiff, proof of demand and refusal are essential to the plaintiff's right to recovery. *Stewart v. Spedden*, 5 Md. 433, 449.

Where, as the case here, the question whether a demand and refusal has been shown requires the resolution of disputed facts, the determination is for the jury under proper instructions on the law. *Dietus v. Fuss*, 8 Md. 148, 159; *Martin v. Lanahan*, 133 Md. 525, 534, 105 A. 777, 780. The appellant has raised no issue in this appeal relating to the trial court's instructions to the jury, relying entirely upon the denial of its motion for directed verdict.

*Mattingly v. Mattingly*, 150 Md. 671, 133 A. 625, adopting the view of John Prentiss Poe as expressed in his definitive work on Pleading, announced the requirements that must be met in the determination whether demand and refusal has been shown. In *Mattingly* the Court of Appeals said at page 674, et seq. [626]:

> "A constructive conversion of this class arises, as stated by Mr. Poe 'where the possession of the defendant, in the first instance, was rightful; as, for example, where he actually found the goods in question, or acquired possession of them lawfully from the plaintiff or from a third person for a limited time or a special purpose. In all such cases, before the action of trover can be maintained, a previous demand by the plaintiff upon the defendant or his duly authorized agent for the delivery of the goods, and a refusal by the latter to deliver, must be shown, and the demand must be shown to have been made at a time when the defendant had it in his power to comply; otherwise the refusal to deliver is no evidence of conversion. The difference between the two classes of cases is

this: Where the injury to the plaintiff's possession is *per se* tortious, the wrongful act itself constitutes the conversion, without more; and the right of action immediately accrues. But in all other cases, the fact of conversion is an inference merely from the refusal of the defendant to deliver the goods upon proper and seasonable demand — such demand and refusal not constituting a conversion in themselves, but being only *prima facie* evidence of an antecedent or continuing conversion, which may or may not be rebutted by the other circumstances of the case. Hence, where it appears that when the demand was made, the defendant refused to deliver until his legitimate liens and charges on the goods were first paid, there was no complete conversion. So also, where the refusal of the defendant is distinctly placed on the ground that they had been taken from his possession, or their delivery to plaintiff enjoined, by due process of law. And, indeed, anything which goes to show the *bona fide* inability of the defendant to comply with the demand will be sufficient; although it can hardly be doubted that if the defendant, in anticipation of the demand, purposely, and with a view of evading it, puts himself in a position, with respect to the goods in question, by which he is disabled from delivering them, such conduct will amount to a conversion. * * * The demand should be made by the plaintiff, or his duly authorized agent, upon the defendant or his agent, and should be so definite as to apprise the defendant with reasonable exactness what goods are meant, and in like manner, the refusal should be shown to be unqualified.' "

In passing upon the propriety of the submission of the case to the jury, this Court is required to assume the truth of all evidence in the case tending to sustain the claim, as well as all inferences of fact reasonably and fairly deducible therefrom. *Smack v. Whitt*, 249 Md. 532, 536, 240 A. 2d 612,

615; *Buchanan v. Gallaher,* 11 Md. App. 83, 87, 272 A. 2d 814, 817.

Applying that principle, the record would permit a finding by the jury of the following facts:

On May 29, 1969 Michael B. Sosslau caused his 1968 Cougar to be delivered to Parlett Ford, Inc. for substantial repairs resulting from a collision, for the agreed sum of $1357.49. Parlett agreed that the specified repairs would not take longer than four weeks. Parlett also agreed to furnish Sosslau a loan vehicle for use during repairs.

Sosslau prodded Parlett repeatedly to spur completion of the repairs. A frame shop chosen by Parlett as sub-contractor for necessary straightening of the frame of the vehicle was declared by it as occasioning the delay.

On or about June 26, 1969 Sosslau was informed that his vehicle was to be returned from the frame shop in two or three days, and "would be back on the road" in two or three days thereafter. In fact, the car was not returned to Parlett for over a month. Sosslau checked every four or five days during the month of July.

On August 1, 1969 Sosslau, pursuant to a phone call from Parlett was asked "to come in for more reliable transportation." The keys of his loan vehicle were taken with Parlett's mechanic saying "I am going to provide you with more reliable transportation." Sosslau previously had complained about mechanical breakdowns of the loaned vehicle and had urged its replacement by another. The mechanic returned, informing Sosslau that: "They had made a policy change and the only kind of car that I would be allowed to have would be a rental car. At the same time he told me that the Cougar frame had been returned with the work not properly done at the frame shop * * *." On that occasion Parlett's representative declined to

estimate when the vehicle repairs would be completed.

Following the events of August 1, 1969, Sosslau discussed his problems with his father and his brother, an attorney. An appointment was made for a meeting at Parlett's place of business on August 4, 1969. At that meeting Sosslau was told by Parlett's manager that the car was only about one-third completed and that "he could not tell us when it was finished and he could not care less if it was finished." The manager acknowledged the promise of a loan vehicle but explained that under a new policy vehicle loans were not being made by Parlett. At that point Mr. Sol Friedman, Attorney, declared that "He would even consider renting this automobile if Mr. Grim would stipulate X date when this car would be finished because otherwise it might just continue and continue and I would be renting a car for I don't know how many more months." Grim rejected this suggestion. Friedman then said that Sosslau would "take the car out of Parlett Ford and have him paid for the work that he had done to date on it." Grim rejected that offer with the comment "This car is not leaving here unless I am paid for the whole damage, the whole estimate." Many salient parts of that testimony were disputed by Parlett.

On August 8, 1969 the original declaration, alleging constructive conversion, was filed in the Circuit Court for Howard County, Maryland.

That evidence, tested by the rule announced in *Mattingly, supra,* would permit the jury to find a breach of contract by Parlett of sufficient dimension to destroy Parlett's right to continued possession of the vehicle; to permit the jury to find an unconditional offer by Sosslau to pay "the legitimate liens and charges on the goods" for work performed upon the vehicle. In short, the jury could conclude that a lawful and proper demand for the return of the vehicle had been made

that was met by an unqualified refusal to return it. Under these circumstances, we hold that there was legally sufficient evidence of a constructive conversion of the Sosslau vehicle by Parlett. The motion for a directed verdict for the defendant properly was denied.

## 2. *Punitive Damages*

That punitive damages are authorized for the conversion of personal property in a proper case is abundantly clear from the authorities. In *McClung-Logan v. Thomas*, 226 Md. 136, 172 A. 2d 494, it was said at page 148 [500]:

> "Punitive damages are properly a question for the jury in an action for wrongful conversion of personal property where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury.
>
> Malice, fraud, deceit and wrongful motive are oftenest inferred from acts and circumstantial evidence. They are seldom admitted and need not be proved by direct evidence." [Citations omitted]

In the subject case, however, we find no evidence, either factual or circumstantial, from which the jury properly could find that the appellant acted wilfully, wantonly, wrongfully and maliciously and in utter disregard of appellee's rights. Appellant's refusal to return the vehicle upon demand was asserted in reliance upon a lien, authorized by statute (Art. 63, § 41), with actual knowledge by the appellee that such a lien was claimed.

Appellee suggests a right to punitive damages is shown by the following actions by appellant:

(a) By tricking him into returning the loan car and the refusing of a substitute vehicle.

> The record shows that appellee signed a written document requiring return of the loan vehicle within ten days from June 17, 1969. As to the

refusal to provide another loan car, the evidence is uncontradicted that it was the result of a new general policy of Parlett and was in no sense personal to Sosslau.

(b) That the actions and statements on August 4, 1969, furnished a reasonable and proper inference of malice and ill will, under *McClung-Logan v. Thomas, supra.*

We think there is a clear distinction. In *McClung-Logan* the defendant, without any legal right or claim took possession of the plaintiff's vehicle under circumstances showing that it was "determined to put a stop to the complaints by seizing the tractor and forcing the appellee to sign a release of all claims that he might have." In the subject case the appellant derived its possession from the voluntary act of the appellee. The events of August 4, 1969 must be considered in the light of one cardinal undisputed fact: the inordinate delay in the repair of the Sosslau vehicle was solely the product of the delays and negligences of the body shop. The body shop was an independent contractor — not an employee of Parlett. In the breach of contract aspect of the subject litigation this circumstance furnishes no defense to Parlett for that inordinate delay as between itself and Sosslau. *Restatement, Contracts,* Sec. 160 (4). In the punitive damage aspect of the tort action, however, it is of the utmost importance. There is not a scintilla of evidence that any employee of Parlett contrived, condoned or contributed to that inordinate delay. On the contrary, the record shows that Parlett attempted to break the log jam created by the body shop's failures and that Sosslau was quite aware of those attempts. Indeed, Parlett enlisted the services of Sosslau himself to intervene with the body shop. Sosslau did so — to no avail. The mere statement of the manager that "he could not care less if it was finished," standing alone —

as indeed it does stand alone — is not legally sufficient evidence to support a finding that the constructive conversion here was accompanied by malice or ill will.

(c) That malice is demonstrated "by appellant's refusal of title * * * its deliberate act of auctioning the vehicle * * * [so] that it would bring far less than * * * if sold in the normal course of business. * * * [and] wrongfully, unlawfully and without legal cause or justification kept and appropriated monies over and above the amount of its alleged lien claim without ever tendering same to appellee."

The rationale of this suggestion is difficult to follow. Appellee had elected to sue in tort for conversion. In that action he was entitled to recover and did in fact recover "the fair market value of the vehicle at the time of its conversion." *Weishaar v. Canestrale*, 241 Md. 676, 217 A. 2d 525. To suggest that a claim for punitive damages may be bottomed on the refusal of Parlett to deliver to Sosslau the remaining value of the vehicle, full payment for which already has been made, is novel indeed. If it is a fact that the method followed by Parlett in its ultimate disposition of the vehicle produced a lesser price than could have been achieved by another method, it is Parlett — not Sosslau — who has sustained the loss.

### 3. *Counsel as Witness*

Prior to commencement of the trial, counsel for Parlett informed the court of his understanding that the appellee intended to call Mr. Sol Friedman, co-counsel of record under the declaration, as a substantive witness. Co-counsel, Allan Sosslau, Esq., conceded that Mr. Friedman would be "present in the courtroom and that is basically the extent of Mr. Friedman's participation. The actual trial of this case, including all examination, opening statements, will be made by me and not by him."

"THE COURT: What is the purpose of having him at the table at all if you are going to do it yourself?

MR. SOSSLAU: Your Honor, I think he has an interest in the case and he has some good ideas once in awhile and some pencil notes from Mr. Friedman in something I overlook is very helpful, to be candid with the Court."

The trial judge overruled a motion to bar use of the witness.

We do not sanction the use of counsel of record as substantive witnesses in a cause, even when their trial participation is of such limited scope as appellee's trial counsel stated it would be, and as the record demonstrates it was. However, had appellant chosen to do so, it could have prevented that limited activity by motion under rule 536 to exclude witnesses from the courtroom. It did not do so.

In any event, we have carefully examined the record in this case, and have concluded that the use of co-counsel as a witness inflicted no inherent damage upon appellant. We disapprove of the course followed here, but do not regard it as reversible error.

*Judgment for $4,000.00 compensatory damages affirmed.*

*Judgment for $36,000.00 punitive damages reversed.*

*Appellant and appellee each to pay one-half of the costs.*