471 A.2d 335

Penelope BENDER

v.

Morton A. BENDER.

Morton A. BENDER

v.

Charles N. SHAFFER, et al.

No. 645, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Feb. 10, 1984.

As Corrected March 6, 1984.

Certiorari Denied June 25, 1984.

594

Charles Norman Shaffer and Michael J. Grady, with whom Peter I.J. Davis, Walter Lee and Shaffer & Davis, Rockville, on brief, for Penelope Bender and Charles Shaffer.

Robert A. DiCicco, Towson, for Morton Bender.

Argued before LOWE, GETTY and BELL, JJ.

GETTY, Judge.

In what we shall refer to as Bender No. 1,[1] Penelope Bender was denied alimony despite a marriage that had lasted for twenty years and notwithstanding that Morton Bender was possessed of sufficient means to pay any reasonable award imposed by the court. Mrs. Bender was advised in Bender No. 1 that her strenuous attack upon the "fault" approach to alimony in this state should be addressed to the Legislature, rather than to the court, for it is that body which must afford relief to citizens dissatisfied with the statutes governing divorce and alimony. *Stein v. Stein,* 251 Md. 300, 247 A.2d 266 (1968).

The Benders were divorced in August, 1977. Mrs. Bender may have fared better had the litigation been deferred until after the 1978 Session of the General Assembly, which substantially altered the property interests of spouses upon the dissolution of marriage. Be that as it may, in this case we are required to revisit the Bender household as it existed prior to the actual divorce.

In April, 1977, Scott Bender, one of the five Bender children, advised his mother that he had gained access to his father's safe. At his mother's direction, Scott removed approximately $93,500.00 and some jewelry from the safe, and, with the possible exception of $2,000.00, gave all of it to his mother. Upon discovery of the loss, Bender reported the theft to the Montgomery County Police who determined that Mrs. Bender, via her son, had acquired the money.

By December, 1977, Mrs. Bender learned that her former husband was seeking to have her prosecuted for the theft. She consulted Charles H. Shaffer and Peter I.J. Davis, who had represented Scott Bender during his interrogation by the police concerning the theft in April. Mrs. Bender turned over $68,000.00 to the attorneys who deposited the funds in a

---

1. *Bender v. Bender,* 282 Md. 525, 386 A.2d 772 (1978).

non-interest-bearing account. The remaining $25,000.00, according to Mrs. Bender, was given to her attorney, Jackson Brodsky, upon whose advice the money was taken from Morton Bender's safe. Brodsky denied receiving the $25,-000.00 and denied advising Mrs. Bender to remove the funds from her husband's safe.

Morton Bender filed suit in July, 1978, for the conversion of the money, naming as defendants, Penelope Bender, Shaffer, Davis, Brodsky and Suburban Trust, holder of the account. The litigation proceeded before Judge John F. McAuliffe, in the Circuit Court for Montgomery County, in the following order:

Amended Declaration dropped Suburban as a defendant.

July, 1979, Penelope returned $68,800.00 to Morton.

August, 1981, Summary Judgment granted Morton on the claim against Penelope Bender for the $25,000.00, reserving for trial the question of pre-judgment interest, Morton's claim against the three attorneys, and Brodsky's claim against Penelope for legal fees.

April, 1983, court granted Morton interest at 6% on the entire sum from the date of theft until the return of $68,800.00 in July, together with interest on the $25,000.00 balance, the total judgment amounting to $51,060.81. Judgment was rendered for Brodsky in the suit against him for $25,000.00, and in Brodsky's favor for $10,854.80 legal fees owed him by Penelope. Directed verdicts were entered in favor of Shaffer and Davis.

On appeal, Penelope Bender relies on the doctrine of interspousal immunity as a defense to her husband's claim against her for the stolen money.

Morton Bender alleges an abuse of discretion in denying him punitive damages, error in excluding evidence of the loss of use of the money, and error in dismissing his case as to Shaffer and Davis after a *prima facie* case had been established. We shall consider Morton Bender's appeal and then Penelope's reliance on spousal immunity.

■ The Court of Appeals has recognized that punitive damages may be awarded in cases of trespass and conversion. *McClung-Logan Equipment Co., Inc. v. Thomas,* 226 Md. 136, 172 A.2d 494 (1961). Provided the plaintiff has established a wanton, willful and malicious course of activity on the part of the defendant, such an award is discretionary with the trier of the facts. The trial judge in this case found that Penelope Bender committed a "rather egregious wrong against Mr. Bender," but concluded that the totality of the circumstances warranted an allowance of interest rather than punitive damages. The court's conclusion was supported by a detailed fact finding which was supported by substantial evidence in the record. His decision, therefore, is not clearly erroneous and will not be disturbed.

■ Mr. Bender's claim for interest at the prime rate was properly rejected. The money in the safe was not earning any amount of interest, although it was subject to being deposited or invested at any time. The record, as the trial judge observed, is devoid of any evidence that the money was going to be invested at any particular rate of return. Interest allowed at the legal rate for the period involved amounted to $22,360.81. We find no error.

■ At the conclusion of Morton Bender's case-in-chief, the trial court granted the Motion to Dismiss filed by appellees Shaffer and Davis. In reviewing such a motion in a non-jury trial under Md.Rule 535, the trial judge follows the same procedure that is employed when a Motion for Directed Verdict is offered in a jury trial. The evidence and all logical and reasonable inferences therefrom are to be considered in the light most favorable to the non-moving party. *J. Whitson Rogers, Inc. v. Board of County Comm'rs.,* 285 Md. 653, 402 A.2d 608 (1979). To withstand a motion to dismiss, evidence must be of legal probative force and evidential value and amount to more than a scintilla of evidence such as surmise, conjecture or possibility. *Ibid.*

■ Generally, conversion may take three forms: tortious, a wrongful taking of the property by the defendant;

unauthorized acts of use or ownership over the goods; and a wrongful detention after due demand for return of the goods. Here, we are dealing with a tortious taking of the property by Penelope Bender. Ordinarily, a demand for a return of the goods is not necessary where the injury to the plaintiff's possession is *per se* tortious. *Mattingly v. Mattingly,* 150 Md. 671, 133 A. 625 (1926). A demand and refusal are necessary where the defendant's possession is by delivery from the plaintiff or a third person. *Mattingly, supra.*

■ Although Mrs. Bender's possession of the money amounted to an actual conversion, the actions of Shaffer and Davis were, at best, constructive conversion. In December, 1977, the two attorneys received all of the cash then in Mrs. Bender's possession and deposited it in a trustees account pending proper identification of the owner. On July 10, 1979, pursuant to a Court Order, the entire $68,800.00 was turned over to Morton Bender.

We need not decide whether Shaffer and Davis were, under the circumstances, entitled to a demand from Bender for the funds. Beyond awaiting a court ordered distribution, they made no effort to exercise any control over the funds. In order to amount to a conversion by these two defendants, their refusal to return the property must have been absolute and unconditional and amount to a denial of Morton Bender's title or right to possession of the money. *Mattingly, supra; Parlett Ford, Inc. v. Sosslau,* 19 Md.App. 320, 311 A.2d 443 (1974). The evidence did not support a conversion of the money by Shaffer or Davis; the Motion to Dismiss was properly granted.

### Interspousal Immunity

■ Throughout the proceeding, Penelope Bender relied upon the doctrine of interspousal immunity as a defense to her husband's suit to recover the money. Judge McAuliffe ruled that the doctrine did not preclude the action where an intentional tort has been committed under circumstances

which render legally inappropriate the imposition of interspousal immunity.

Penelope Bender has framed the issue as follows:

Whether interspousal immunity, recognized in Maryland until June 30, 1983,[2] may be ignored as legally inappropriate in a conversion action where the spouse's conduct, although intentional, was less than outrageous?

Whether the conduct complained of may be held to be "outrageous" presents a question of fact. The scope of review of an action tried by the court without a jury, Md.Rule 1086, requires that we review the case upon the law and the evidence, and that we affirm the lower court on its judgment of the evidence unless that judgment is clearly erroneous.

In this case we are called upon to decide, in answering Penelope's issue, whether the earlier case of *Lusby v. Lusby,* 283 Md. 334, 390 A.2d 77 (1978), is to be restricted to the facts of that case (as Penelope claims), or whether *Lusby* serves as a beacon for *Boblitz* (as Morton claims). In his scholarly analysis of the history of the doctrine of interspousal immunity, Judge Smith points out that *Lusby* is the first case involving an intentional tort. The Court held:

"We find nothing in our prior cases or elsewhere to indicate that under the common law of Maryland a wife was not permitted to recover from her husband in tort when she alleged and proved the type of outrageous, intentional conduct here alleged." [3]

Although *Lusby* does not explicitly define the extent of the change it directs in the law of interspousal immunity, preferring a case by case approach, it clearly paves the way for such actions involving intentional infliction of personal

---

2. *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (decided June 30, 1983), abrogated interspousal immunity rule, prospectively.

3. *Lusby* involved an assault and rape by the wife's estranged husband, together with an attempted rape by two of the husband's companions.

injury. In most jurisdictions, the first erosion of the doctrine arose in cases involving property interests, due to the interpretation given Married Women's Acts.[4] In Maryland, however, the passage of the Married Women's Act (Annotated Code of Md., Article 45, Sec. 5) in 1898 had no such effect. As recently as *Fernandez v. Fernandez,* 214 Md. 519, 135 A.2d 886 (1957), the Court of Appeals refused to distinguish between torts against property interests and torts against the person. Consistent with *Fernandez,* the *Lusby* Court has likewise refrained from distinguishing between intentional torts against the person and intentional torts against property.

We do not construe *Lusby* in the narrow context of being restricted to its facts as Penelope Bender suggests. In our view, the Court of Appeals clearly acknowledges in *Lusby* that, on a case by case basis, the intentional infliction of a tort, involving property or personal injury, may give rise to a cause of action between spouses. Judge Smith's use of the word "outrageous" aptly describes the nature of the offense in *Lusby.* The use of a descriptive adjective, however, does not require that the same word be grafted upon each succeeding tortious act in order to establish a cause of action.

We believe the Court's primary focus in *Lusby* was its recognition that henceforth in Maryland intentional torts would form a basis for interspousal suits at law. At page 352, 135 A.2d 886, Judge Smith said:

> "It will be seen that in none of the prior Maryland cases has there been an allegation of an intentional tort, much less the outrageous conduct here set forth."

The use of the word "outrageous," in our view, appropriately characterized the offense, but the Court was sanctioning claims for intentional torts and not claims limited to

---

4. *See Restatement of Torts,* Second, Sec. 895F; *accord,* Prosser, *Torts,* Sec. 122 at 861 (4th ed.).

outrageous torts. We note that the Court in its opinion set forth Article 45, Section 5 of the Maryland Code which authorizes married women to sue and be sued in tort actions, and quoted extensively from the dissenting opinion in *Thompson v. Thompson,* 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180. That dissent, authored by Justice Harlan and in which Justices Holmes and Hughes joined, held that the District of Columbia statute, not unlike Art. 45, Sec. 4 and Sec. 5, embraced intentional torts and authorized suits between spouses therefor.

We have already established that Maryland, unlike the majority of states, has not distinguished between intentional torts involving personal injury and those involving property rights. If we graft the term "outrageous" on cases involving personal injury, we would then be required to apply the same term to property disputes. The proper predicate for either tort is whether it was intentionally committed. The severity thereof is a matter of damages, not of liability.

Mrs. Bender would use the doctrine of interspousal immunity as a sword; at best it was intended to be a shield. Judge McAuliffe had substantial evidence that:

Mrs. Bender directed her minor son to steal $93,500.00 from his father for his mother's benefit.

Mrs. Bender had no rightful claim to the funds.

Mrs. Bender's actions could be found to violate the criminal laws of this state.

The Benders were divorced at the time this action was brought.

We hold that the trial judge's finding that an intentional tort was committed under circumstances which render legally inappropriate the interposition of interspousal immunity is supported by substantial evidence. We, therefore, affirm.

JUDGMENTS AFFIRMED IN EACH CASE.

Costs to be Paid by the Parties Equally.