## GREGG *v.* GREGG

[No. 145, October Term, 1951.]

*Decided April 4, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Hugh J. Monaghan, II,* for the appellant.

*E. Paul Mason, Jr.,* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant is the wife of the appellee. She filed her bill in the Circuit Court No. 2 of Baltimore City, asking for permanent alimony and counsel fees, and for reimbursement of sums expended by her for necessaries. A demurrer filed to this bill was sustained, and thereupon it was amended, omitting the prayer for reimbursement for necessaries. Subsequently, after due proceedings, she was awarded $38.00 a month permanent alimony, and counsel fees. She brought a suit in the Baltimore City Court against her husband for $2,500 which she claimed she had expended for necessaries since her desertion by her husband, but before her alimony suit was filed. This sum she alleged her husband had not repaid her, although it was his duty to make proper provision for her. A demurrer to the declaration in this suit was sustained without leave to amend, whereupon she appealed here.

It is not contended that the appellant was entitled to have an order passed in the alimony case directing her husband to pay for these necessaries. *Kriedo v. Kriedo,* 159 Md. 229, 150 A. 720. *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451. *Blair v. Blair,* 199 Md. 9, 85 A. 2d 442. Indeed, the fact that the equity court has no power to pass such an order in retrospect is, according to the appellant, the reason why her remedy, if any, must be in a suit at law. The question, therefore, is whether she can sue her husband in such a case.

The question of the obligation of a father for necessaries furnished his child was discussed in the case of *Kriedo v. Kriedo, supra,* and it was said in that case, which was a divorce proceeding, that this obligation was

primarily to persons rendering the services in cases where such persons had not been paid, and in cases where the child's mother had paid for such services, she was entitled to reimbursement from the father, and her remedy was by a suit at law. In that case, however, the parties had been divorced before the necessaries were furnished, and the claim was for extraordinary expenses due to the illness and death of a child of the parties, which were not contemplated in the alimony granted. The situation is entirely different where the husband and wife are not divorced, and in this case we are called upon to decide whether a wife can sue *her husband and not her former husband,* where she has expended money for necessaries which it was his duty to furnish.

There was no right in a married woman to sue her husband at common law, and, therefore, any right which she has in this respect must be conferred upon her by statute. The first Maryland statute which removed many of the disabilities under which married women suffered was the Act of 1898, Chapter 457. Sec. 5 of that act, codified as Sec. 5 of Article 45 of the Code of Public General Laws, authorized married women to engage in business and to contract and to sue upon their contracts, and for the recovery and protection of their property, and for torts committed against them. The section was construed first in *Furstenburg v. Furstenburg,* 152 Md. 247, 136 A. 534. In that case, a woman sued her husband for damages for an injury sustained by her while riding with him in his automobile and as a result of his negligence. The court followed the Supreme Court of the United States in the case of *Thompson v. Thompson,* 218 U. S. 611, 31 S. Ct. 111, 54 L. Ed. 1180, construing what it said was a practically identical federal statute applicable to the District of Columbia. In that case, by a divided court (Justices Harlan, Holmes and Hughes dissenting), the right of a wife to sue her husband for a tort was denied, and this court said that the Act of 1898 did not authorize such a suit. It said that this conclusion was

fortified by the Act of 1900, Chapter 633, Sec. 19(a), now codified in Article 45, Sec. 20, of the Code, which authorized a married woman to contract with her husband as if she was a *feme sole*, and to sue and be sued upon such contract. The court said that this later act would have been wholly superfluous if the Legislature had intended that by the Act of 1898, a wife was authorized to sue her husband for breach of contract. The court said that the Act of 1900 did not go beyond contractual matters, and that it did not give a wife any right to sue her husband for a personal tort, and that there had been no subsequent legislation.

This case was shortly followed by the case of *David v. David*, 161 Md. 532, 535, 157 A. 755, 756, 81 A. L. R. 1100, where a woman sued her husband and his partner because she fell through an elevator shaft on their property which they allegedly had left unguarded. The court said that the fiction of the legal identity of the husband and the wife had been partially dissipated by the adoption of legislation which permitted suits between them to enforce contractual liabilities. It said there had been a determined effort to have such legislation construed to permit actions between husband and wife for damages resulting from some wrongful or negligent act of the defendant, and that it had been so construed in some jurisdictions, such as Alabama, Arkansas, Connecticut, New Hampshire, and Oklahoma, but, it said, that view had been rejected by the weight of authority, "not only upon the technical and artificial ground that the identity of husband and wife persists in its original vigor *until it has been completely dissolved by express legislative mandate, in respect to all matters which the Legislature has not expressly included within the meaning of the emancipatory statutes,* but upon the broader sociological and political ground that it would introduce into the home, the basic unit of organized society, discord, suspicion and distrust, and would be inconsistent with the common welfare." (Emphasis supplied.) This last ground is as artificial as the first.

It applies to a post-bellum situation a theory which is clearly only applicable to conditions prior to the difficulty which caused the bringing of the legal action. After discord, suspicion and distrust have entered the home, it is idle to say that one of the parties shall not be allowed to sue the other because of fear of bringing in what is already there. However, these ancient theories which form a part of the common law have to be followed by us unless they have been changed by legislative action, and the clear import of the decision in the *David* case is that the emancipatory statutes must be strictly construed. The Legislature has not amended or changed this emancipatory legislation since 1931, when the *David* case was decided.

It is suggested, however, that this is an action on a contract, and, while it is not a contract made directly with the husband (on which the wife is expressly given the right to sue by the Act of 1900), it is an implied contract of the husband to pay for necessaries upon which he could be sued by those furnishing them. Therefore, it is argued that the wife, by paying for these necessaries herself, has succeeded to, or become subrogated to, the rights of the parties furnishing the necessaries, and consequently she has a contract with her husband upon which she can sue. It is, of course, true that not everything purchased by the wife is a necessary, and it is also true that a wife may purchase even necessaries on her own faith and credit, and cannot require her husband's estate to pay for them. *Farver v. Pickett*, 162 Md. 10, 158 A. 29. These are, however, questions with which we are not concerned here, and we are assuming in our discussion of this case that the articles for which the wife paid were *bona fide* necessaries for which the husband would have been obligated to pay to those from whom they were procured, had the wife not paid the bills. The only question is whether the statute has removed her common law disability to the extent of allowing her to bring such a suit. If the Legislature has not done this, then it is beyond our power to give her such

a right. The ancient and medieval restrictions placed upon married women can only be removed by legislative action. The courts do not make laws, nor have they power to construe them in a way different from that which is apparent on the face of the enactment.

Appellant contends that the courts of New York, Oklahoma and Connecticut have construed the statutes of these states to enable a wife to sue her husband under similar circumstances, and that we should follow their construction. She cites to us particularly the case of *DeBrauwere v. DeBrauwere,* 203 N. Y. 460, 96 N. E. 722, 38 L. R. A., N. S., 508, which involves a quite similar situation. The court in that case discussed the doctrine of subrogation which had been the view of the trial judge. It said it preferred to place the husband's liability on a different ground. It held that by the New York law, a woman's marital disabilities had been "wholly removed by statute". The New York statute (Domestic Relations Law, Article 4, Sec. 51) provides in part that a married woman has all the rights in respect to property, and to make contracts with respect thereto with any person, including her husband, and "to exercise all powers and enjoy all rights thereto and in respect to her contracts", as if she were unmarried. This is the statute which the New York court construed. This case was followed by *In re Reich's Estate,* (a Surrogate's case), 138 Misc. 823, 247 N. Y. S. 437, and by the Supreme Court, Appellate Division, in an action for alimony, *Eller v. Eller,* 266 App. Div. 684, 40 N. Y. S. 2d 417. Apparently, according to this last case, a money judgment can be entered in New York for necessaries which, as we have shown, cannot be done here. The Oklahoma case, *Sodowsky v. Sodowsky,* 51 Okla. 689, 152 P. 390, followed the New York case and construed the Oklahoma statute to allow the wife to sue the husband. It declined to follow the case of *Decker v. Kedley,* 9 Cir., 148 F. 681, which construed otherwise a statute of Alaska, said to be similar to that of Oklahoma. *Bohun v. Kinasz,* 124 Conn. 543, 200 A. 1015, construed the

Connecticut statute (General Statutes, 1930, Sec. 5154) to have removed a wife's common law disability to sue her husband, and said that her right was now complete. These cases involve the construction of different statutes, and in each of them the courts have said that the entire common law disability of married women to sue on contracts has been removed. However, the *DeBrauwere* case in New York was decided in 1911. Ten years later, in 1921, the case of *Perlman v. Brooklyn City R. Co.* 117 Misc. 353, 191 N. Y. S. 891 (affirmed without opinion, 202 App. Div. 822, 194 N. Y. S. 971) decided that Sec. 57 of the Domestic Relations Law providing that a married woman has a right of action for an injury to her person, or for an injury arising out of the marital relation, did not give her the right to sue her husband in a tort action. This same point of view was taken by the Court of Appeals of New York in 1927 in the case of *Allen v. Allen,* 246 N. Y. 571, 159 N. E. 656. The lower court was affirmed on the ground that the later acts of the Legislature had left unchanged the old common law rule adopted in *Schultz v. Schultz,* 89 N. Y. 644. There is, however, a vigorous dissenting opinion by Judge Pound, concurred in by Judge Andrews, which discusses the whole subject at length. Sec. 57 was amended in 1937 to provide specifically that a married woman has a right of action against her husband for his wrongful or tortious acts resulting to her in any personal injury, and it was not until that change was made that the Court of Appeals of New York allowed such a suit to be brought. *Coster v. Coster,* 289 N. Y. 438, 442, 46 N. E. 2d 509, 146 A. L. R. 702.

In Maryland, with respect to tort actions, we are in the same situation as was New York before 1937. The disability has not been removed by statute. The Act of 1898 did not permit a suit by a wife against her husband on contracts, and it was not until the Act of 1900 that this was allowed. *Furstenburg v. Furstenburg, supra.* That statute, however, is strictly limited to contracts made *with* a husband, and we cannot extend

it to contracts which the husband has with someone else, and which the wife acquires by subrogation. In the *David* case, the court said, as we have quoted, that any change in the common law rule had to be made by *express legislative mandate*. Whether or not a wife should be permitted to sue her husband on an implied contract to furnish her with necessaries, as alleged in this case, is a matter not within our province to determine. There is no express mandate from the Legislature to that effect, and, since there is none, we cannot extend the plain words of the fifty-year-old statute to cover a case which was either not envisioned or not intended to be included at the time it was enacted. If now this omission should be repaired, it is for the Legislature, and not for us, to act.

*Judgment affirmed with costs.*