806 A.2d 740

**William E. BOZMAN**

v.

**Nancy L. BOZMAN.**

**No. 1167, Sept. Term 2001.**

Court of Special Appeals of Maryland.

Sept. 4, 2002.

John J. Condliffe (Shub–Condliffe & Condliffe, P.A. on the brief), Towson, for appellant.

Robert W. Lazzaro (Heisler, Williams & Lazzaro, L.L.C. on the brief), Towson, for appellee.

Argued before DAVIS, BARBERA and RAYMOND G. THIEME, JR. (Retired, specially assigned), JJ.

BARBERA, Judge.

This appeal asks that we examine the "aged, if not antiquated," doctrine of interspousal immunity.[1] Despite its antiquity, the doctrine remains a part of Maryland's common law.

Appellant, William E. Bozman, appeals from an order of the Circuit Court for Baltimore County dismissing his two-count second amended complaint against appellee, Nancie L. Bozman, on the ground that it was barred by interspousal immunity.[2] Appellant presents the following questions for our review, which we have rephrased:

---

1. The doctrine was thus described by this Court more than twenty years ago in *Linton v. Linton,* 46 Md.App. 660, 661, 420 A.2d 1249 (1980).

2. Both appellant and appellee style this appeal as *William E. Bozman v. Nancy L. Bozman.* The record indicates that the correct spelling of appellee's first name is "Nancie."

I. Did the circuit court err in dismissing Count I of the second amended complaint on the ground of interspousal immunity because malicious prosecution is an outrageous intentional tort, to which the defense of interspousal immunity does not apply?

II. Did the circuit court err in dismissing Count II of the second amended complaint on the ground of interspousal immunity because the parties were not married when the cause of action arose?

We hold that the tort of malicious prosecution is not so outrageous as to bring it within the narrow exception to the doctrine of interspousal immunity, and thus we affirm the decision of the circuit court dismissing Count I of the second amended complaint on this basis. But, because appellee failed to demonstrate that the parties were married when the cause of action in Count II arose, we vacate the court's dismissal of that count and remand for further proceedings.

## FACTUAL BACKGROUND AND
## LEGAL PROCEEDINGS

Appellant and appellee were married in a civil ceremony in Baltimore County, Maryland on August 16, 1968. As of late, a tenuous relationship has existed between the parties.

In January 2001, appellant filed a one-count complaint for malicious prosecution against appellee. The complaint alleged that on three separate occasions appellee filed false criminal charges against him, causing the State's Attorney for Baltimore County to file a criminal information. The charges included stalking, harassment, and multiple violations of a protective order. The complaint further alleged that some of the charges were dismissed before trial and the remainder resulted in appellant's acquittal.

Appellee filed a motion to dismiss appellant's complaint on the grounds that the complaint failed to state a claim upon which relief could be granted and that the doctrine of interspousal tort immunity barred the suit. Attached to the motion was a memorandum of law and an affidavit, signed by

appellee and dated February 16, 2001, stating "[t]hat she is still married to [appellant]."

On March 12, 2001, after the filing of appellee's motion to dismiss but before the court ruled on it, the parties were divorced. Thereafter, the court dismissed appellant's complaint with fifteen days leave to amend it.

Appellant filed an amended complaint, curing a factual deficiency in the original complaint. Appellee responded with a motion to dismiss the amended complaint, again asserting interspousal immunity. Appellee attached to the motion a memorandum of law and an affidavit, signed by her and dated April 23, 2001, again stating "[t]hat at all times alleged in the Amended Complaint," the parties were husband and wife.

On July 30, 2001, the court held a hearing on appellee's motion to dismiss the amended complaint. At the outset, appellant informed the court of his intention to file a second amended complaint that same day, incorporating by reference the allegations contained in his amended complaint and adding a second count for malicious prosecution. Count II of the second amended complaint alleged that appellee maliciously and falsely filed new charges against him for violating an ex parte order, that the charges were brought to trial, and that they were dismissed for lack of evidence.

At the hearing, the parties stipulated that appellee's defense of interspousal immunity would be deemed raised in response to appellant's newly presented second amended complaint. Appellant emphasized, however, that the defense did not apply to Count II because the parties were divorced by the time the grounds for the cause of action set forth in that count had arisen.

Appellee did not respond to appellant's assertion that their divorce foreclosed her reliance on interspousal immunity as a defense to Count II. Nor did she suggest that an affidavit would be forthcoming reflecting that the parties were married when the cause of action set forth in Count II arose.

Regarding the doctrine's applicability to Count I, appellant relied on *Lusby v. Lusby*, 283 Md. 334, 390 A.2d 77 (1978). He argued that the intentional deprivation of someone's liberty by the bringing of repeated false allegations resulting in incarceration is sufficiently outrageous to render the doctrine inapplicable.

At the conclusion of the hearing, the court dismissed both Counts I and II of the second amended complaint as barred by interspousal immunity, stating: "I don't think that the situation as set forth in this case meets the ... outrageous set of facts that was set out in *Lusby*." The court did not address appellant's argument that the defense did not apply to Count II because the parties were not married at the relevant time.

From the court's order dismissing his complaint, appellant filed this timely appeal.

## DISCUSSION

Appellant mounts a two-pronged attack upon the court's dismissal of his second amended complaint. With regard to Count I, he argues that the defense of interspousal immunity, though seemingly applicable because the parties were married when the cause of action arose, is inapplicable to the tort of malicious prosecution alleged in that count because of the tort's "outrageous" character. As he did below, appellant relies upon the Court of Appeals' *Lusby* decision, which held that the doctrine does not apply to "the type of outrageous, intentional conduct" alleged in that case.

With regard to Count II, appellant argues that the defense simply does not apply, because appellee failed to establish that the parties were married at the time the cause of action alleged in that count arose. Presumably, appellant would also argue that the reasons why the court erred in dismissing Count I apply with equal force to Count II. We shall discuss each of appellant's complaints in turn. But first, we review the doctrine of interspousal immunity that underlies the issues presented on appeal.

## Interspousal Immunity

The common law doctrine of interspousal immunity was predicated on the concept of a husband and wife as one legal unit. *Thompson v. Thompson,* 218 U.S. 611, 614, 31 S.Ct. 111, 54 L.Ed. 1180 (1910). The foundation of this nearly extinguished doctrine lay not only in the archaic belief that the marriage of a man and woman created a single entity, but also on the premise that to allow suits between spouses would adversely affect familial ties and strike at the heart of domestic relations.[3] *Id.* Because a wife's legal identity merged with her husband's upon marriage, married women could not enter into contracts, own property, sue, or be sued. *Id.* at 614–15, 31 S.Ct. 111. This legal fiction of husband and wife as one identity barred suits between spouses.[4] *Id.* at 615, 31 S.Ct. 111.

The doctrine's applicability to tort cases has long been a part of Maryland's common law. *See Doe v. Doe,* 358 Md. 113, 119, 747 A.2d 617 (2000), and cases cited therein. The Court of Appeals and this Court nevertheless have recognized that the historical underpinnings of the doctrine are contrary to present-day circumstances. *Boblitz v. Boblitz,* 296 Md. 242, 245, 462 A.2d 506 (1983); *Linton v. Linton,* 46 Md.App. 660, 661, 420 A.2d 1249 (1980). Indeed, over the years, the Court of Appeals has had misgivings about some of its prior decisions holding that the doctrine remains viable in Maryland.

---

**3.** To date, forty-five states and the District of Columbia, either by court decision or legislative action, have abrogated the doctrine of interspousal immunity in whole or in part. Maryland is among those states that have abrogated the doctrine only in part. *Doe v. Doe,* 122 Md.App. 295, 320 n. 3, 712 A.2d 132 (1998), *rev'd on other grounds,* 358 Md. 113, 747 A.2d 617 (2000).

**4.** Given its origins, one wonders why the doctrine is called the doctrine of *inter* spousal immunity. As the Court of Appeals has said, "[a]pplication of the words *inter* spousal immunity to this ancient rule of law borders on mockery. It would be more aptly called a rule in derogation of married women." *Boblitz v. Boblitz,* 296 Md. 242, 245, 462 A.2d 506 (1983).

More than half a century ago, Chief Judge Marbury, writing for the Court, rejected as "artificial" the "broader sociological and political ground that [suits between spouses] would introduce into the home, the basic unit of organized society, discord, suspicion and distrust, and would be inconsistent with the common welfare." *Gregg v. Gregg*, 199 Md. 662, 666, 87 A.2d 581 (1952) (citations omitted). Chief Judge Marbury said the following about that asserted rationale for the doctrine:

> It applies to a post-bellum situation a theory which is clearly only applicable to conditions prior to the difficulty which caused the bringing of the legal action. After discord, suspicion and distrust have entered the home, it is idle to say that one of the parties shall not be allowed to sue the other because of fear of bringing in what is already there.

*Id.* at 667, 87 A.2d 581.

Its criticism of the doctrine notwithstanding, the Court of Appeals was unwilling in *Gregg,* and for many years thereafter, to abrogate the doctrine in the face of legislative silence on the subject. *See, e.g., Stokes v. Assoc. of Indep. Taxi Operators, Inc.,* 248 Md. 690, 691, 237 A.2d 762 (1968) (recognizing a split of authority on the continued viability of the doctrine, but stating that any change in the rule must come from the General Assembly); *Hudson v. Hudson,* 226 Md. 521, 526–27, 174 A.2d 339 (1961) (stating that "we feel impelled to follow our previous decisions . . . and to hold that the wife's cause of action [against husband to recover for personal injuries] was extinguished upon marriage to the defendant. . . ."); *Ennis v. Donovan,* 222 Md. 536, 542–43, 161 A.2d 698 (1960) (holding that the common law precluded a married woman from suing her husband for injuries suffered by her as the result of his negligence, and that "if it be desirable to permit a married woman, under certain circumstances, to sue her husband in tort, this authorization should emanate from the Legislature, not from the courts"); *Gregg,* 199 Md. at 670, 87 A.2d 581 (concluding that, absent an "express mandate from the Legislature to that effect," the Court was powerless to permit a wife's suit against her husband, and if "this

omission should be repaired, it is for the Legislature, and not for us, to act").

It was not until 1978, in *Lusby,* that the Court of Appeals narrowed the scope of the doctrine's applicability in the area of intentional torts. In that case, Ms. Lusby brought a tort action for damages against her husband, alleging that he and two unidentified men had forced her vehicle off a public highway at gunpoint, and that he then "forcefully and violently" raped her and thereafter assisted his accomplices in attempting to rape her. 283 Md. at 335–36, 390 A.2d 77.

Judge Smith, writing for the Court, traced the doctrine's history and application to cases in Maryland, and declared: "We can conceive of no sound public policy in the latter half of the 20th-century which would prevent one spouse from recovering from another for the outrageous conduct here alleged." *Id.* at 357, 390 A.2d 77. Noting that "[t]he General Assembly has not heeded the suggestions by this Court that a new statute be enacted," and that none of the Court's prior cases had involved an intentional tort, *id.,* the Court held: "We find nothing in our prior cases or elsewhere to indicate that under the common law of Maryland a wife was not permitted to recover from her husband in tort when she alleged and proved the type of outrageous, intentional conduct here alleged," *id.* at 358, 390 A.2d 77.[5]

---

**5.** Judge Smith recounted in *Lusby* that *Furstenburg v. Furstenburg,* 152 Md. 247, 136 A. 534 (1927), an early case holding that Maryland's "Married Women's Act" did not abrogate the common law prohibition against a wife's suing her husband in tort, had been strongly influenced by *Thompson v. Thompson,* 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910). *Lusby v. Lusby,* 283 Md. 334, 340, 390 A.2d 77 (1978). The Supreme Court had been called upon in *Thompson* to determine whether the District of Columbia's "Married Women's Act" virtually identical in material respect to Maryland's Act conferred upon a wife the right to maintain a tort against her husband. Over the vigorous dissent of Justice Harlan, in which Justices Holmes and Hughes joined, the Court held that the Act did not permit a wife to sue her husband for torts committed against her person.

Judge Smith commented in *Lusby* that *"Thompson* was decided nine years before the adoption of the 19th Amendment and *Furstenburg,* eight years after its adoption. One senses in *Thompson* a reluctance to

Then Chief Judge Gilbert, writing for this Court two years later in *Linton*, had this to say about the Court's decision in *Lusby*:

Maryland has steadfastly adhered to the common law doctrine of interspousal immunity in tort cases. Nevertheless, the Court, in *Lusby* [ ], recognized an exception to the doctrine whenever the tort committed against the spousal victim is not only intentional, as in assault and battery, but "outrageous," as where the errant spouse's conduct transcends common decency and accepted practices. The Court, in *Lusby*, was cognizant of the fact that there was no marital harmony that could be preserved by denying to the wife in that case the right to pursue civil remedies for the wrong done to her because the husband had effectively destroyed the marriage through his own atrocious misbehavior. *Lusby* represents a safe passage past the Rock ["of Gibraltar, guarding, as it were the sea of matrimony from an invasion by causes apt to alienate the spouses." 46 Md.App. at 661, 420 A.2d 1249]. It is a limited way to be sure, but it is a small gap that heretofore did not exist.

46 Md.App. at 664, 420 A.2d 1249 (citations and footnotes omitted).

*Lusby* was followed by *Boblitz*, decided by the Court of Appeals in 1983. The Court had before it a trial court's grant of summary judgment to the husband in his wife's suit against him alleging negligence in his operation of a motor vehicle that led to her suffering "serious, painful and permanent injuries." 296 Md. at 243, 462 A.2d 506. The Court took this opportuni-

---

permit change. Certainly Justices Harlan, Holmes, and Hughes, the dissenters in *Thompson*, constituted three of the great minds of the Supreme Court of the United States in 1910." *Id.* at 357, 390 A.2d 77. The Court also noted that: "It must be remembered, that stripped of excess verbiage, what [the Maryland Act] says is: 'Married women shall have power ... to sue ... for torts committed against them, as fully as if they were unmarried....'" *Id.* at 357 n. 6, 390 A.2d 77. Read together, this comment and note are fair indication that the *Lusby* Court believed *Furstenburg* (and perhaps the cases that followed it) were wrongly decided.

ty to abrogate the common law of interspousal immunity in negligence cases.

Playing a part in the Court's decision, apparently, was the view held by a majority of the courts nationwide that the underpinnings of the doctrine found no place in modern society:

> We share the view now held by the vast majority of American States that the interspousal immunity rule is unsound in the circumstances of modern life in such cases as the subject [case]. It is a vestige of the past. We are persuaded that the reasons asserted for its retention do not survive careful scrutiny. They furnish no reasonable basis for denial of recovery for tortious personal injury. We find no subsisting public policy that justifies retention of a judicially created immunity that would bar recovery for injured victims in such cases as the present.

*Id.* at 273, 462 A.2d 506. The Court was "mindful of the value of the doctrine of *stare decisis* and aware that for reasons of certainty and stability, changes in decisional doctrine ordinarily should be left to the Legislature." *Id.* The Court nevertheless concluded: " 'We have never construed [the doctrine of *stare decisis* ] to inhibit us from changing or modifying a common law rule by judicial decision where we find, in light of changed conditions or increased knowledge, that the rule has become unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people.' " *Id.* at 274, 462 A.2d 506 (quoting *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 459, 456 A.2d 894 (1983)).

The Court went on to hold in *Boblitz* that, in cases such as the one before it, "we have no legislative barrier to abrogation of this outmoded rule of law. Indeed, after legislative passage and approval by the people of Article 46 of the Maryland Declaration of Rights any ancient deprivation of rights based upon sex would contravene the basic law of this State." *Id.* at 274–75, 462 A.2d 506.

Cognizant of the Court of Appeals' decision in *Lusby,* and apparently influenced by the Court's subsequent opinion in

*Boblitz,* this Court for some time entertained the notion that *Lusby* had abrogated the doctrine of interspousal immunity with respect to *all* intentional torts. Thus, in *Bender v. Bender,* 57 Md.App. 593, 600, 471 A.2d 335, *cert. denied,* 300 Md. 152, 476 A.2d 721 (1984), we described the issue before us as "whether the earlier case of *Lusby* [ ], is to be restricted to the facts of that case ..., or whether *Lusby* serves as a beacon for *Boblitz* ...." We reasoned in *Bender* that "the Court's primary focus in *Lusby* was its recognition that henceforth in Maryland intentional torts would form a basis for interspousal suits at law." *Id.* at 601, 471 A.2d 335. We commented that the Court's use of the word "outrageous" in *Lusby* was a mere adjective that appropriately described the offense, "but the Court was sanctioning claims for intentional torts and not claims limited to outrageous torts." *Id.* at 601–02, 471 A.2d 335. We therefore upheld the trial court's finding that an intentional tort was committed under circumstances "which render[ed] legally inappropriate the interposition of interspousal immunity...." *Id.* at 602, 471 A.2d 335.

Our decision in *Bender* led us, in *Doe v. Doe,* 122 Md.App. 295, 309, 712 A.2d 132 (1998), *rev'd,* 358 Md. 113, 747 A.2d 617 (2000), to declare that neither the doctrine of interspousal immunity nor public policy barred the husband's causes of action for fraud and intentional infliction of emotional distress. We followed our opinion in *Bender* to say in *Doe* that *Lusby* had abolished the defense of interspousal immunity with respect to all intentional torts. *Id.* at 322–23, 712 A.2d 132.

Our opinion in *Doe,* however, was reversed by the Court of Appeals. *Doe v. Doe,* 358 Md. 113, 747 A.2d 617 (2000). The Court made clear in that case that we were wrong in both *Bender* and *Doe* to conclude that *Lusby* had abrogated interspousal immunity for all intentional torts. *Id.* at 120, 747 A.2d 617. In so doing, the Court reaffirmed its "narrow" holding of *Lusby* that, "under the common law of this State, interspousal immunity ha[s] never been applied where the conduct alleged was 'outrageous' and intentional." *Id.* at 121, 747 A.2d 617; *Lusby,* 283 Md. at 358, 390 A.2d 77.

As the Court of Appeals itself has done, *Boblitz,* 296 Md. at 273, 462 A.2d 506, we question the continued viability of this antiquated doctrine. The doctrine runs counter to present-day norms. Further, its application often arises in instances when the parties' marriage is near dissolution or, at the very least, is foundering on the shoals of anger, distrust, or discontent. This leaves little doubt that the doctrine's oft-cited rationale of preserving the unity and sanctity of the marital unit simply does not pertain.

We recognize that the doctrine may serve the practical purpose of preventing spouses from instituting suits in tort as a means of gaining an advantage in pending divorce proceedings or for some other improper reason.[6] We remain unconvinced, however, that retention of this doctrine best reflects the will of the people of this State as evidenced by, among other reforms, enactment of the Equal Rights Amendment in 1972.[7]

---

**6.** In *Boblitz,* the Court of Appeals reviewed the opinions of the courts in the twelve states that, as of the writing of *Boblitz* in 1983, continued to recognize interspousal immunity as a viable defense to spousal tort claims. 296 Md. at 253–57, 462 A.2d 506. From those decisions, the Court extracted six reasons for retention of the doctrine:

1. The unity of husband and wife.
2. Interspousal tort actions will destroy the harmony of the marital relationship.
3. Retention of the doctrine will prevent collusive and fraudulent claims.
4. Retention of the doctrine will guard against an increase in trivial claims.
5. Divorce and criminal courts furnish adequate redress.
6. Change is solely within the purview of the Legislature.

*Id.* at 256–57, 462 A.2d 506 (citations omitted).

**7.** We note also the passage more than 100 years ago of the "Married Women's Act," Ch. 457 of the Acts of 1898, later codified in Article 45 § 5 and now found in Md.Code (1984, 1999 Repl.Vol.), §§ 4–203 through 4–205 of Fam. Law Art. This legislation bestowed upon married women additional legal rights, including the right to hold or dispose of property, the right to sue for torts committed against them, to engage in business, and to contract. In addition, we note the abolition, by Ch. 1010 of the Acts of 1945, of the common law actions of alienation of affections and breach of promise to marry; and the declaration of unconstitutionality, under Maryland's Equal Rights

Regardless, we are bound to follow the dictates of the law as it presently exists in Maryland. The law is that interspousal immunity may be raised as a defense to a viable cause of action alleging an intentional tort so long as the tort is not "outrageous," as that term is used in *Lusby* and *Doe*. It is this issue that lies at the heart of this case, to which we now turn.

### This Case

### I.

Appellant asserts that appellee's conduct in filing false criminal charges against him was sufficiently outrageous as to foreclose her from the shield that interspousal immunity historically has provided. He points to the facts that appellee's actions resulted in his arrest and incarceration on five occasions and caused him to have to wear an ankle bracelet for nearly eight months. Given the posture of this case, we presume the accuracy of appellant's well-pleaded facts and allegations, *Young v. Medlantic Lab. P'ship*, 125 Md.App. 299, 303, 725 A.2d 572, *cert. denied*, 354 Md. 572, 731 A.2d 970 (1999), and confine our review to whether the court was legally correct in granting appellee's motion to dismiss, *Adamson v. Correctional Med. Servs. Inc.*, 359 Md. 238, 246, 753 A.2d 501 (2000). As we explain below, appellee's conduct does not come within the narrow meaning of "outrageous," as we understand that term to have been used by the Court of Appeals in *Lusby*. The circuit court was, therefore, correct in dismissing Count I of the second amended complaint.

We assess the conduct at issue in this case by reference to the conduct confronting the Court in *Lusby*. The Court summarized the acts at issue in that case:

> Appellant, Diana R. Lusby (the wife), brought an action in the Circuit Court for Prince George's County against John Doe, Richard, Roe, and Gerald Lee Lusby (the husband).

Amendment, of the common law action of criminal conversation. *See Kline v. Ansell*, 287 Md. 585, 593, 414 A.2d 929 (1980).

She alleged that while she was operating her motor vehicle on a public highway the husband "pulled along side of [her] in his pick-up truck and pointed a highpowered rifle at her." She attempted to flee by increasing the speed of her car. She claimed that then "another truck occupied by two (2) men, whose identities are unknown to [her] and who, [t]hereinafter are referred to [in the declaration] as John Doe and Richard Roe, cut and forced her off the road, nearly causing a collision." (Counsel for the wife directed that no summons be issued for Messrs. Doe and Roe until such time as specific directions were received from counsel. Summons has never been issued.) After she stopped her car, the husband "approached her automobile with a rifle pointed at her, opened her left door, ordered her to move over, forced his way into the automobile and began to drive the automobile." They were followed by Doe in the husband's truck and Roe in the second truck. Thereafter, the wife "was forced to enter [the husband's] truck with [the husband] and Richard Roe." John Doe drove the wife's vehicle and the second truck was left parked. She alleged that her husband then struck her, "tore [her] clothes off and did forcefully and violently, despite [her] desperate attempts to protect herself, carnally know [her] against her will and without her consent." She further claimed that, with the aid and assistance of her husband, both Doe and Roe attempted to rape her. She said that following those events her husband "and his two companions released [her] and [her husband] told [her] that he would kill her if she informed anyone of the aforesaid events; and that he has continued to harass and threaten [her]."

283 Md. at 335–36, 390 A.2d 77.

Without minimizing in any way the harsh consequences to appellant wrought by appellee's behavior in this case, we cannot say that it is of comparable character to that addressed by the Court in *Lusby*. Appellee's actions in the instant case no doubt caused appellant to suffer significant humiliation and hardship. But they did not involve extreme violence of the most personal and invasive sort, the threat of death and a

display of the means by which to carry out that threat, or the physical and psychic trauma that the victim in *Lusby* endured. We conclude, therefore, that the conduct that underlies appellant's claim of malicious prosecution is not, in and of itself, indicative of the sort of outrageous conduct contemplated by the *Lusby* exception to interspousal immunity.

Our conclusion is buttressed by the decisions of the Court of Appeals concerning the tort of intentional infliction of emotional distress. This tort, recognized for the first time by the Court of Appeals in 1977, includes as one of its elements that the conduct must be "extreme and outrageous." *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977). The Court in *Harris* characterized as "troublesome" the determination of whether a defendant's conduct is "extreme and outrageous" in the context of intentional infliction of emotional distress. *Id.* at 567, 380 A.2d 611. Liability consistently has been found, however, only " 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (quoting Restatement (Second) of Torts, ch. 2, Emotional Distress, § 46 (1965)).

The Court in *Harris* did not need to decide whether the defendant's conduct at issue—repeatedly mimicking an employee's stutter—was extreme or outrageous, 281 Md. at 570, 380 A.2d 611, because the evidence was insufficient to establish the separate element of the tort that the wrongful conduct caused severe emotional distress, *id.* at 572–73, 380 A.2d 611. Since then, however, the Court has held that "[o]ne who knowingly engages in conduct that is highly likely to infect another with an incurable disease . . . has committed extreme and outrageous conduct." *B.N. v. K.K.,* 312 Md. 135, 146, 538 A.2d 1175 (1988). Likewise, "a psychologist who is retained to improve a marital relationship [and then] facilitate[s] a romantic, sexual relationship" with the spouse of a patient has committed conduct that is outrageous. *Figueiredo–Torres v. Nickel,* 321 Md. 642, 654, 584 A.2d 69 (1991).

Also instructive on the question of what constitutes outrageous conduct are cases involving the exception of the parent-child immunity doctrine in instances when a minor child has suffered from "cruel, inhuman or outrageous conduct at the hands of a parent." *Eagan v. Calhoun,* 347 Md. 72, 75, 698 A.2d 1097 (1997) (citing *Mahnke v. Moore,* 197 Md. 61, 68, 77 A.2d 923 (1951)). In *Mahnke,* the Court held that the parent-child immunity doctrine did not bar a minor child's suit against her father's estate for the anguish the child suffered as the result of the father's shooting the child's mother with a shotgun in the child's presence and with particularly gruesome effects; keeping the child with the body for six days thereafter; then driving with child to another location where he shot and killed himself, in the child's presence and again with gruesome effects. 197 Md. at 63, 77 A.2d 923. Similarly, in *Eagan,* the Court held that the immunity doctrine did not bar two minor children from suing their father for the voluntary manslaughter of their mother. 347 Md. at 85, 698 A.2d 1097. In both instances, the conduct at issue was "cruel and inhuman treatment, not just of the person killed but of the other family members as well." *Id.* at 85, 698 A.2d 1097; *Mahnke,* 197 Md. at 68, 77 A.2d 923.

■ Measured against *Lusby,* and the related cases of *B.N.* and *Figueiredo–Torres,* and *Eagan* and *Mahnke,* the actions of appellee in the case at bar are not outrageous. We therefore hold that a spouse's filing of criminal charges that are ultimately dismissed does not come within the *Lusby* exception to the doctrine of interspousal immunity. The doctrine shielded appellee from suit by appellant so long as the parties were married at the times relevant to the cause of action. Appellant does not argue that the parties were not married at the relevant times. The court was thus correct in dismissing Count I of the second amended complaint.

In so holding, we repeat that we do not underestimate the distress, embarrassment, and inconvenience to appellant that appellee's filing of the criminal charges occasioned. Moreover, we disapprove of any individual's invoking, without

cause, the heavy machinery of the criminal justice system for reasons of personal animus. By the same token, we are mindful that "[p]ublic policy requires that citizens be free to resort to the courts to resolve grievances without fear that their opponent will retaliate with a . . . lawsuit against them." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37, 694 A.2d 952 (1997).

## II.

In arguing that the court erred in dismissing Count II of the second amended complaint, appellant shifts his argument from an attack upon the doctrine's applicability to the tort of malicious prosecution, to an attack upon appellee's failure to establish the condition precedent for its application, namely, that the parties were married when the cause of action arose. We agree with appellant's contention, and hold that the court erred in dismissing Count II on the ground of interspousal immunity.

■ "[A] cause of action is said to have arisen 'when facts exist to support each element.'" *Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56 (2000) (quoting *Owens–Illinois, Inc. v. Armstrong*, 326 Md. 107, 121, 604 A.2d 47 (1992)). The elements of the tort of malicious prosecution are: "(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other then bringing the plaintiff to justice." *Okwa v. Harper*, 360 Md. 161, 183, 757 A.2d 118 (2000).

■ As its second element suggests, the "tort of malicious prosecution includes not only the initiation of criminal proceedings against the plaintiff, but also the termination of those proceedings in the [plaintiff's] favor as a necessary element of the cause of action." *Heron*, 361 Md. at 265, 761 A.2d 56. In other words, termination of the criminal proceeding in the plaintiff's favor " 'is a condition precedent to the institution of

the action.'" *Id.* at 268, 761 A.2d 56 (quoting *Pisano v. City of Union City,* 198 N.J.Super. 588, 487 A.2d 1296, 1299 (Law Div.1984)). *Heron* thus lays to rest appellee's contention that the cause of action arises at the filing of criminal charges.

In the case at bar, the allegation of malicious prosecution contained in Count II did not arise until the State's Attorney entered a *nolle prosequi* of the criminal charge that underlay the claim of malicious prosecution. For interspousal immunity to bar that count from going forward, the parties would have had to have been married *at the time* the malicious prosecution cause of action arose, *i.e.,* when the charges were *nolle prossed.*

Interspousal immunity is an affirmative defense. *Doe,* 358 Md. at 121, 747 A.2d 617. Accordingly, it was not appellant's burden to plead the *inapplicability* of this defense, as appellee suggests. Instead, it was appellee's obligation not only to raise the defense in her motion to dismiss but to support it with proper affidavit. *Cf. Kee v. State Highway Admin.,* 313 Md. 445, 460, 545 A.2d 1312 (1988)("The absence of governmental immunity need not be pleaded by a plaintiff; rather, governmental immunity is a non-waivable defense, to be raised by a motion to dismiss, a motion for summary judgment, or any other pleading.").

Appellee's affidavit in support of her motion to dismiss the amended complaint does not state that the parties were married at the time the cause of action in Count II arose.[8] This alone forecloses dismissal of that count on the ground of interspousal immunity. We also note that, not only did the court have no sworn statement by appellee that the parties were married when the cause of action arose, the court had a proffer from appellant's counsel that the parties were divorced by that time. We mention this not to suggest that appellant,

---

**8.** As we previously mentioned, the parties stipulated at the hearing that the interspousal immunity defense wife presented in her motion to dismiss appellant's first amended complaint would be applied to the second amended complaint.

as the complainant below, had the obligation of coming forward with evidence to rebut, anticipatorily, a possible affirmative defense, but to suggest that the court had been alerted to the defense's inapplicability to Count II. In any case, as we have said, it was appellee's burden as the proponent of the motion to dismiss to demonstrate that the affirmative defense applied. She failed to do this with respect to Count II of the second amended complaint, and the court erred in dismissing it on that basis.

## CONCLUSION

In sum, we hold that the doctrine of interspousal immunity barred appellant's suit against appellee for the intentional tort of malicious prosecution. The tort, at least as alleged here, is not so outrageous as to bring it within the exception to the doctrine recognized by the Court of Appeals in *Lusby*. The parties in this case were married at the time the cause of action alleged in the first count arose. They were not married at the time the cause of action alleged in the second count arose. Accordingly, the circuit court was correct in dismissing the first count as barred by interspousal immunity, but erred in dismissing the second count on that basis.

**ORDER DISMISSING COUNT I OF THE SECOND AMENDED COMPLAINT IS AFFIRMED. ORDER DISMISSING COUNT II OF THE SECOND AMENDED COMPLAINT IS VACATED AND THE CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED EQUALLY BY APPELLANT AND APPELLEE.**